**EXHIBIT 2**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ARTHUR M. LOVE,      ) | |
|        ) | |
|     Plaintiff,     ) | |
|        ) | |
|       v.      ) | Case No. 1:21-cv-2029 (RDB) |
|        ) | Judge Richard D. Bennett |
| LARRY HOGAN, *et al*.,     ) | |
|        ) | |
|     Defendants.     ) | |
|        ) | |

**DECLARATION OF JEFFREY E. MCFADDEN IN SUPPORT OF**
**MOTION TO WITHDRAW APPEARANCE AS LOCAL COUNSEL OF RECORD**
**FOR ARTHUR M. LOVE**

1.      My name is Jeffrey Edward McFadden.  I am an attorney licensed to practice law in the State of Maryland and have been a member in good standing of the bar of this Court since 1990.  I am above the age of 18 and, if called upon by the Court, would be competent to testify to the following facts.

2.      I am a sole practitioner.  The name of my law firm is the Law Offices of Jeffrey E. McFadden, LLC ("McFaddenLaw").

3.      Each of the events described below is, unless otherwise indicated, based on my first-hand knowledge.

4.      On or about August 9, 2021, on the basis of a referral from a Baltimore law firm, John Pierce, a partner, and Ryan Marshall, an associate, of the PierceBainbridge law firm approached me to serve as PierceBainbridge's local counsel in this Court in connection with PierceBainbridge's engagement by Plaintiff Arthur Love in litigation against the State of Maryland and other State officials.

5.      On August 10, 2021, Mr. Marshall provided me with proposed Summonses and a Complaint, which Messrs. Pierce and Marshall asked that McFaddenLaw file on behalf of Mr. Love.

6.      Messrs. Pierce and Marshall also asked that McFaddenLaw move Mr. Pierce's admission to appear *pro hac vice* in the case.

7.      Mr. Marshall informed Mr. McFadden that McFaddenLaw should direct its engagement letter to PierceBainbridge through Mr. Pierce and that Mr. Pierce would obtain necessary concurrences from Mr. Love for McFaddenLaw's work as PierceBainbridge's local counsel.

8.      Based on these representations, McFaddenLaw filed the Summonses and Complaint and commenced the instant action on August 11, 2021.

9.      Also, on August 11, 2021, I sent Messrs. Pierce and Marshall a form of motion for admission *pro hac vice* that would be acceptable for use in this Court.  On August 18, 2021, Mr. Marshall returned that motion to me for filing.

10.     The *Pro Hac Vice* Motion requires me and McFaddenLaw to represent to the Court that Mr. Pierce had "never been disbarred, suspended, or denied admission to practice law in any jurisdiction."  To verify that representation, I undertook necessary due diligence.

11.     While that due diligence did not find records of disbarment, suspension, or denial of admission, surprisingly, it did find a series of reports regarding Messrs. Pierce and Marshall and PierceBainbridge.  Some of these reports appeared to be scurrilous attacks by litigation adversaries designed to injure Messrs. Pierce's and Marshall's and PierceBainbridge's reputation.  Several reports also indicated that Mr. Marshall had two counts of fraud pending against him in the State of Pennsylvania.  Other reports attacked Mr. Pierce and his law firm's

character such that the attacks ultimately appeared to lead to Mr. Pierce's and PierceBainbridge's withdrawal of motions for admission *pro hac vice* in two cases.  This information put me and my firm on inquiry notice that I needed more information to be able to make a complete representation to the Court.

12.     By e-mail dated August 24, 2021, I advised Mr. Pierce of the results of the due diligence and expressed concern that these and similar allegations would come to light in the course of moving for Mr. Pierce's admission *pro hac vice* in the instant litigation.  I thus asked Mr. Pierce for a detailed, written rebuttal of the allegations so that I would be in a position to respond to similar allegations should they arise in the instant matter.  I stated that, if I were to proceed with moving Mr. Pierce's admission *pro hac vice,* I needed to be able to demonstrate to the Court that I had identified these issues and had assembled an appropriate, truthful, and convincing response.  I ended the communication by stating to Mr. Pierce that if he were unable to do so, Mr. Pierce should look to other local counsel.  A copy of this e-mail is attached as Exhibit A.

13.     On August 30, 2021, I forwarded to Mr. Marshall my e-mail to Mr. Pierce dated August 24, 2021.  A copy of this e-mail is attached as Exhibit B.

14.     On September 3, 2021, I sent a letter by electronic and certified mail to Messrs. Pierce and Marshall stating that I still had not received a response to my inquiry to Mr. Pierce dated August 24, 2021, and that the requested response was becoming all the more pressing giving continued negative press reports concerning Messrs. Pierce and Marshall.  The letter concluded by stating that if I did not receive a response by September 7, 2021, I would have to advise Plaintiff Love of the situation and possibly advise this Court as well.  A copy of this letter is attached as Exhibit C.

15.     Later on September 7, 2021, Mr. Pierce sent me an e-mail briefly describing the circumstances surrounding the withdrawal of the *pro hac vice* motions in two other cases.  A copy of this e-mail is attached as Exhibit D.

16.     On September 20, 2021, I sent Messrs. Pierce and Marshall a letter by electronic and certified mail. The letter stated that I had reviewed Mr. Pierce's e-mail response to my letter of September 3 and had continued to follow press reports regarding Mr. Pierce's recovery from an illness and issues that were continuing to linger as to a number of Mr. Pierce's cases.  The letter went on to state that the continuing controversy surrounding the status of Mr. Pierce's firm and its lawyers had caused me to conclude that I could not or should not make the required representations to the Court necessary to proceed with Mr. Pierce's *pro hac vice* motion specifically and the instant case generally.  The letter thus advised that McFaddenLaw was withdrawing as local counsel in the instant matter and, for the benefit of Plaintiff, asked that Mr. Pierce find and substitute in new local counsel.  The letter concluded by stating that should Mr. Pierce and PierceBainbridge be unable to substitute in new local counsel, I would move this Court to withdraw.  A copy of this letter is attached as Exhibit E.

17.     On September 23, 2021, I sent an e-mail to Messrs. Pierce and Marshall to follow up on my letter of September 20, 2021.  The e-mail noted that I had received two voice messages from Plaintiff Love, that it was apparent to me that Messrs. Pierce and Marshall had not advised Plaintiff Love of McFaddenLaw's intent to withdraw, and that they needed to do so.  The e-mail also advised Messrs. Pierce and Marshall of the 120-day requirement for service of process and that such service had not yet been effected.  A copy of this e-mail is attached as Exhibit F.

18.     Later that same day, Mr. Pierce responded by e-mail to me, copy to Mr. Marshall, stating that Mr. Marshall should advise Plaintiff Love of the withdrawal and further stating that

Mr. Pierce would work on finding new local counsel.  A copy of this e-mail is attached as Exhibit G.

19.    On October 24, 2021, I sent an e-mail to Messrs. Pierce and Marshall to follow up on the status of advising Plaintiff Love of McFaddenLaw's intended withdrawal and of finding new local counsel.  A copy of this e-mail is attached as Exhibit H.  Neither Mr. Pierce nor Mr. Marshall responded.

20.    On November 17, 2021, and in accordance with Local Rule 101.2.(a), I sent, by electronic and certified mail, a Notice of Withdrawal to Plaintiff Love and Messrs. Pierce and Marshall.  A copy of the Notice is attached as Exhibit I.

21.    Given the approaching deadline for service of the Summonses and Complaint, and in order to avoid any prejudice to Plaintiff Arthur Love, I am causing the Summonses and Complaint to be served on Defendants as required by the Federal and Maryland Rules of Civil Procedure.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 1, 2021

Jeffrey Edward McFadden

**EXHIBIT A**

## Fw: Love v. Hogan, et al., Motion for Admission Pro Hac Vice

Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>

Wed 12/1/2021 11:47 AM

To: Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>

**From:** Jeffrey McFadden
**Sent:** Tuesday, August 24, 2021 11:18 AM
**To:** John Pierce <jpierce@piercebainbridge.com>
**Subject:** Love v. Hogan, et al., Motion for Admission Pro Hac Vice

Dear John,

As you know, your office approached me on the basis of a referral from a Baltimore law firm to serve as your local counsel in the U.S. District Court for the District of Maryland in connection with your engagement by Mr. Arthur Love in litigation against the State of Maryland and other State officials.  On August 10, 2021, your associate Ryan Marshall provided me with a proposed Summons and Complaint, which you and Ryan asked that I file on behalf of Mr. Love.  You and Ryan also asked that I move your admission to appear *pro hac vice* in the case.  Ryan informed me that I should direct my engagement letter to you and you would obtain necessary concurrences from Mr. Love for my work as his local counsel.

Based on these representations, I filed the Summons and Complaint and commenced the action on August 11, 2021.  I was not able to file the proposed *Pro Hac Vice* Motion that you and Ryan had originally provided me because it had you moving your own admission, which is not acceptable in this court.  On August 11, 2021, I sent you and Ryan a form of motion that would be acceptable for use in the District of Maryland.  On August 18, 2021, Ryan returned that motion to me for filing.

As you know, the *Pro Hac Vice* Motion requires me to represent to the Court that you have "never been disbarred, suspended, or denied admission to practice law in any jurisdiction."  To verify that representation, I undertook necessary due diligence.  While I did not find records of disbarment, suspension, or denial of admission, surprisingly, I did find a series of reports regarding you and PierceBainbridge, some of which appear to be scurrilous attacks by litigation adversaries designed to injure your reputation.  In particular, a publication calling itself Sunlight Reports appears to have devoted itself to attacking you and your firm.

But beyond Sunlight, we have come across and have reviewed other pleadings or articles concerning two pending cases attacking in some way your character and ultimately resulting in a withdrawal of your *pro hac vice* motions.

The first is an opposition made to your motion for admission *pro hac vice* in a case captioned *Navaid Alam, et al. v. Kabir Ahmad, et al*. filed in the Supreme Court of the State of New York, County of New York.  I also saw that your local counsel in that case later filed a Notice of Withdrawal of your *pro hac* motion.

The second matter concerns allegations made by the prosecutors in the Kyle Rittenhouse case in Wisconsin, which again appear ultimately to have led to your local counsel's withdrawal of your *pro hac vice* motion.

I have no basis on which to judge these allegations about you.  But I am concerned -- indeed have little doubt -- that the lawyers representing the Maryland government defendants in the *Love v. Hogan* case will be aware of the withdrawals above and will oppose your Motion on the same or similar grounds, irrespective of the fact that I have held off on serving the defendants pending your and my resolution of

these matters.  I am also concerned that the court clerk or court personnel might find these allegations in connection with reviewing the *pro hac* motion.  I believe inquiries from the Court would come to me as the sponsor of any motion that I file.

In light of these developments, before I can proceed to file the *Pro Hac* Motion, I will need you to provide me a written rebuttal of the circumstances alleged in the matters described above.   This is necessary for me to complete my due diligence.  If we proceed, I need to be able to demonstrate to the court that I identified these issues and have assembled an appropriate, truthful, and convincing response.  If you are unable to do this, I suggest you look to other local counsel.

I realize we have an obligation to our client, so it is important that we commence this litigation without any impediment to proceeding.


Sincerely yours,

Jeff McFadden


**Jeffrey E. McFadden**
**Law Offices of Jeffrey E. McFadden, LLC**
**312 Prospect Bay Drive East**
**Grasonville, MD  21638**
**(410) 490-1163**
**jmcfadden@jmcfaddenlaw.com**

**EXHIBIT B**

Fw: Love v. Hogan, et al., Motion for Admission Pro Hac Vice

Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>
Wed 12/1/2021 11:52 AM
To: Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>

**From:** Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>
**Sent:** Monday, August 30, 2021 11:09 AM
**To:** Ryan Marshall <rmarshall@piercebainbridge.com>
**Subject:** Fw: Love v. Hogan, et al., Motion for Admission Pro Hac Vice


Ryan,

As discussed, here is the e-mail I sent to John.

All the best.


Jeff

**Jeffrey E. McFadden**
**Law Offices of Jeffrey E. McFadden, LLC**
**312 Prospect Bay Drive East**
**Grasonville, MD  21638**
**(410) 490-1163**
**jmcfadden@jmcfaddenlaw.com**

---

**From:** Jeffrey McFadden
**Sent:** Tuesday, August 24, 2021 11:18 AM
**To:** John Pierce <jpierce@piercebainbridge.com>
**Subject:** Love v. Hogan, et al., Motion for Admission Pro Hac Vice

Dear John,

As you know, your office approached me on the basis of a referral from a Baltimore law firm to serve as your local counsel in the U.S. District Court for the District of Maryland in connection with your engagement by Mr. Arthur Love in litigation against the State of Maryland and other State officials.  On August 10, 2021, your associate Ryan Marshall provided me with a proposed Summons and Complaint, which you and Ryan asked that I file on behalf of Mr. Love.  You and Ryan also asked that I move your admission to appear *pro hac vice* in the case.  Ryan informed me that I should direct my engagement letter to you and you would obtain necessary concurrences from Mr. Love for my work as his local counsel.

Based on these representations, I filed the Summons and Complaint and commenced the action on August 11, 2021.  I was not able to file the proposed *Pro Hac Vice* Motion that you and Ryan had originally provided me because it had you moving your own admission, which is not acceptable in this court.  On August 11, 2021, I sent you and Ryan a form of motion that would be acceptable for use in the District of Maryland.  On August 18, 2021, Ryan returned that motion to me for filing.

As you know, the *Pro Hac Vice* Motion requires me to represent to the Court that you have "never been disbarred, suspended, or denied admission to practice law in any jurisdiction." To verify that representation, I undertook necessary due diligence. While I did not find records of disbarment, suspension, or denial of admission, surprisingly, I did find a series of reports regarding you and PierceBainbridge, some of which appear to be scurrilous attacks by litigation adversaries designed to injure your reputation. In particular, a publication calling itself Sunlight Reports appears to have devoted itself to attacking you and your firm.

But beyond Sunlight, we have come across and have reviewed other pleadings or articles concerning two pending cases attacking in some way your character and ultimately resulting in a withdrawal of your *pro hac vice* motions.

The first is an opposition made to your motion for admission *pro hac vice* in a case captioned *Navaid Alam, et al. v. Kabir Ahmad, et al.* filed in the Supreme Court of the State of New York, County of New York. I also saw that your local counsel in that case later filed a Notice of Withdrawal of your *pro hac* motion.

The second matter concerns allegations made by the prosecutors in the Kyle Rittenhouse case in Wisconsin, which again appear ultimately to have led to your local counsel's withdrawal of your *pro hac vice* motion.

I have no basis on which to judge these allegations about you. But I am concerned -- indeed have little doubt -- that the lawyers representing the Maryland government defendants in the *Love v. Hogan* case will be aware of the withdrawals above and will oppose your Motion on the same or similar grounds, irrespective of the fact that I have held off on serving the defendants pending your and my resolution of these matters. I am also concerned that the court clerk or court personnel might find these allegations in connection with reviewing the *pro hac* motion. I believe inquiries from the Court would come to me as the sponsor of any motion that I file.

In light of these developments, before I can proceed to file the *Pro Hac* Motion, I will need you to provide me a written rebuttal of the circumstances alleged in the matters described above. This is necessary for me to complete my due diligence. If we proceed, I need to be able to demonstrate to the court that I identified these issues and have assembled an appropriate, truthful, and convincing response. If you are unable to do this, I suggest you look to other local counsel.

I realize we have an obligation to our client, so it is important that we commence this litigation without any impediment to proceeding.


Sincerely yours,

Jeff McFadden


**Jeffrey E. McFadden**
**Law Offices of Jeffrey E. McFadden, LLC**
**312 Prospect Bay Drive East**
**Grasonville, MD  21638**
**(410) 490-1163**
**jmcfadden@jmcfaddenlaw.com**

**EXHIBIT C**

**Law Offices of Jeffrey E. McFadden, LLC**
312 Prospect Bay Drive East
Grasonville, MD  21638

Jeffrey E. McFadden
(410) 490-1163
jmcfadden@jmcfaddenlaw.com

September 3, 2021

**BY ELECTRONIC MAIL AND CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

John M. Pierce, Esq.
Ryan J. Marshall, Esq.
PierceBainbridge, P.C.
355 S. Grand Avenue, 44th Floor
Los Angeles, CA  90071

Re:   Love v. Hogan, et al., 1:21-cv-02029 (RDB)

Dear John and Ryan:

I hope this letter finds John on the road to a speedy recovery.  As of today, I have not received a response to the e-mail I sent to John on August 24 and forwarded to Ryan on August 30.  A meaningful response is becoming all the more pressing given reports like the one below.  My fundamental concern is that Mr. Love's interests are not jeopardized or compromised.

If I do not hear back from you by close of business next Tuesday, September 7, I will contact Mr. Love to advise him of the situation and to gain an understanding of how he wants to move forward.  That, in turn, may require me to advise the court of the situation.

I look forward to hearing from you.

Very truly yours,

Jeffrey E. McFadden

# John Pierce's Capitol Riot Cases In Peril As He Fights COVID

*By Ryan Boysen*

Law360 (September 2, 2021, 6:58 PM EDT) -- After a week of confusion that made headlines nationwide and threatened to derail a swath of Jan. 6 Capitol riot cases, it appears that conservative firebrand attorney John Pierce is in fact in the hospital with COVID-19 and will soon be bringing on more lawyers to help with his immense caseload while he recovers.

Pierce, who represents more defendants charged with storming the U.S. Capitol than any other private attorney, has been incommunicado for more than a week amid conflicting reports that he's been hospitalized with a severe illness.

That sudden absence has led to friction with his clients, exasperation from judges and concern from the Department of Justice, which said in a filing on Monday that the situation has ground Pierce's 16 Capitol riot cases to "a standstill."

On Thursday, a person who is close to Pierce and familiar with the situation confirmed to Law360 that Pierce was in the hospital with a nasty case of COVID-19, but denied media reports that he had been on a ventilator or non-responsive.

Separately, at two Capitol riot hearings on Thursday, a young associate who works with Pierce told Judge Amit Mehta of the U.S. District Court for the District of Columbia that Pierce was bringing on two more attorneys to help with those cases. The specifics of Pierce's illness weren't discussed during the hearings.

That associate, Ryan Marshall, is facing felony charges for allegedly defrauding an elderly woman and has not yet passed the bar exam, meaning that he can't act as a fully authorized attorney on behalf of Pierce's clients. Nonetheless, Marshall has been appearing for Pierce at a string of hearings over the past week with the blessing of the judges involved, since no one else was available to do so.

The strange situation led Judge Mehta to approve the Department of Justice's request to

appoint an "advisory council" for Peter Schwartz, one of Pierce's Capitol riot clients, on Thursday. At another hearing before Judge Mehta on Thursday, for fellow Jan. 6 defendant and Pierce client Shane Jenkins, Judge Mehta kept a previously appointed public defender in place until Pierce is well enough to appear.

At a third hearing on Thursday, a Capitol riot defendant who had previously been represented by Pierce, Deborah Lee, told a magistrate judge that she was firing Pierce because it was difficult to communicate with him while he has been hospitalized.

That brings the number of Capitol riot defendants represented by Pierce to 16, which is still far more than any other private attorney. Even before Pierce's illness, some detractors said it would be impossible for a single lawyer to effectively defend so many of those complicated and potentially high-stakes cases.

The events of the past few days appeared to lend credence to those concerns, when Pierce's absence caused so much chaos and confusion that on Monday the Department of Justice finally called on judges to take "any steps" necessary if things aren't cleared up soon.

It all began last week, on Tuesday, when Pierce missed a hearing for a Capitol riot client due to what Marshall told the court was a "conflict." Later that same day, Marshall told prosecutors that he'd just heard that Pierce had been rushed to the hospital after an "accident." The next morning, Marshall reportedly told a judge at another hearing that Pierce was "hospitalized with COVID-19, on a ventilator and non-responsive."

In a brief interview on Thursday, Marshall said he doesn't believe that he used those exact words. The statement was taken out of context, he said, as he only meant to convey that he hadn't been able to get ahold of Pierce.

Nonetheless, that statement kicked off frenzied speculation from many Capitol riot watchers, as well as a round of headlines and Twitter posts gleefully mocking the outspokenly anti-vaccine Pierce for contracting COVID-19.

Later that evening a friend of Pierce's, Brody Womack, released a statement that further

muddied the waters, saying Pierce was "suffering from dehydration and exhaustion," symptoms that "might be related to COVID-19."

The next morning, on Thursday, Marshall told a judge at yet another hearing that he was receiving conflicting information about Pierce, who had been incommunicado for days at that point.

At the same time, the wife of one of Pierce's Jan. 6 clients, Kenneth Harrelson, complained in a fundraising email about how frustrating it was being unable to get ahold of Pierce for the past few days.

Then on Monday, the Department of Justice finally weighed in, calling Pierce's weeklong absence untenable in light of the fact that Marshall has not passed the bar and therefore can't act as a licensed attorney on behalf of Pierce's clients.

"The United States thus finds itself in a position where [Pierce's Jan. 6 clients] appear to be effectively without counsel," the DOJ wrote, adding that the cases are "at a standstill."

That filing, in turn, sparked a wave of headlines at many of the nation's largest news outlets, leading to further speculation about what was happening and whether Pierce — who has been known to occasionally disappear for days when he was struggling with substance abuse issues several years ago — was lying about being sick with COVID-19.

Pierce himself did not respond to a request for comment on Thursday, and several people close to him declined to comment on the record.

The events of this week are just the latest in a series of high-profile ups and downs for Pierce over the past few years. He has boomeranged between various conservative causes ever since his former law firm, Pierce Bainbridge Beck Price & Hecht LLP, collapsed in stunning fashion roughly a year ago.

The $70 million debt left over from that collapse has continued to dog Pierce, leading critics and even prosecutors to accuse him of trying to spin his conservative caseload into a money machine by raking in crowdfunded donations.

Pierce went to Harvard Law School and for years was a respected litigator and up-and-comer in the world of BigLaw, making partner at Quinn Emanuel Urquhart & Sullivan LLP before jumping to Latham & Watkins LLP and then briefly holding a leadership role at K&L Gates.

Personal problems and increasingly erratic behavior led Pierce to burn bridges with those firms, however, according to interviews with several former colleagues, and in 2017 he set up his own firm, which later became known as Pierce Bainbridge Beck Price & Hecht.

Pierce Bainbridge experienced explosive growth for more than a year, reaching roughly 70 attorneys on staff by mid-2019, before abruptly collapsing amid a raft of partner departures, massive debt and a financial scandal, in which Pierce pledged his firm's future revenues to multiple lenders. Pierce previously told Law360 that his own substance abuse issues had also contributed to the collapse.

After attending rehab, Pierce vowed to rebuild in early 2020, and created a new firm known simply as Pierce Bainbridge PC. Shortly thereafter, in the summer of 2020, he helped launch the #FightBack Foundation alongside conservative firebrand attorney Lin Wood.

The #FightBack Foundation initially vowed to "take the far left to court for their abuses of power," an apparent reference to defamation suits filed against it, but the organization quickly shifted gears after Pierce began representing Kyle Rittenhouse just a few days after it was founded.

Rittenhouse is accused of killing two men and wounding another in an August 2020 shooting at a Black Lives Matter protest in Kenosha, Wisconsin. Rittenhouse quickly became a polarizing figure, with left-wing detractors labeling him a murderous vigilante and right-wing supporters styling him as a Second Amendment icon who acted in self-defense.

Despite having no background as a criminal attorney, Pierce began representing Rittenhouse and raising millions of dollars through #FightBack on the 17-year-old's behalf before things fell apart.

The #FightBack Foundation managed to raise Rittenhouse's $2 million bail and free him before trial, but Pierce parted ways with the organization as Wood began focusing more intently on the presidential election last fall. In December, Pierce withdrew from Rittenhouse's criminal case after prosecutors questioned the ethics of Pierce raising millions for his client despite being deeply in debt himself. Then in February, Rittenhouse fired Pierce altogether.

Rittenhouse's new attorneys now claim that Pierce's actions interfered with Rittenhouse's criminal defense case and have accused Pierce of pocketing much of the money raised on Rittenhouse's behalf.

Pierce has hotly disputed those claims.

After parting ways with #FightBack and Rittenhouse, Pierce began representing several defendants accused of taking part in the Jan. 6 Capitol riot, in which hundreds of supporters of President Donald Trump violently stormed the Capitol in Washington.

As part of that work, Pierce founded the National Constitutional Law Union in June, calling it an alternative to the well-known American Civil Liberties Union, which Pierce claims has "lost its way" by embracing "the radical left."

On Twitter, Pierce has leaned into several fringe theories while defending the Capitol riot cases. He's been especially vocal about suggesting that his clients and the rest of the defendants have been set up by the Federal Bureau of Investigation. That same theory has been floated by Fox News host Tucker Carlson, who has previously invited Pierce on his show to discuss the Rittenhouse case.

Pierce has vowed to seek security camera footage and other evidence from the government that might bolster those FBI setup claims.

Some critics have questioned his approach, however. National security journalist Marcy Wheeler, for example, recently wrote on her widely read blog that handling 17 Capitol riot cases "would be an impossible feat even for the most experienced defense attorney, and harder still for a civil attorney like Pierce."

--Editing by Karin Roberts.

**EXHIBIT D**

## Fw: Love v. Hogan, et al., 1:21-cv-02029 (RDB)

**Jeffrey McFadden** <jmcfadden@jmcfaddenlaw.com>

Wed 12/1/2021 11:59 AM

To:  Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>

**From:** John Pierce <jpierce@piercebainbridge.com>
**Sent:** Tuesday, September 7, 2021 3:13 PM
**To:** Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>; Ryan Marshall <rmarshall@piercebainbridge.com>
**Subject:** Re: Love v. Hogan, et al., 1:21-cv-02029 (RDB)

Hi Jeff. I went into the hospital for 12 days literally the morning you sent your email (I believe it was the same day). Sorry for the delay in responding. Those two cases should not be a concern for anyone. In Rittenhouse, although I created the FightBack Foundation with Lin Wood last summer, I resigned from the board months before the prosecutors' motion and had no knowledge or control of its finances. The motion was filed by extremely unethical prosecutors and was designed to dirty up me and Kyle publicly. But so far as I know there was nothing wrong, illegal or unethical about FightBack. Indeed, it was responsible (along with my fundraising efforts and media appearances) for raising over $2M cash to bail out someone being charged with multiple counts of homicide. I count that as one of the greatest accomplishments of my career. I withdrew before the court could rule on it to avoid more distraction for Kyle and because I had completed my task of building a great Wisconsin criminal defense team.

On the Navaid Alam case, that was all driven by the same former disgruntled employee Don Lewis (who I fired for failing to cooperate with a sex assault investigation) who spends 24 hours a day writing nonsense about me on Sunlight-Reports. His lawyer was the same lawyer for the opposing party in that case, Neal Brickman, before I succeeded in getting Brickman disqualified. I withdrew because the client decided to go with a couple of my former partners who formed their own firm.

That was kind of a quick explanation because I am scrambling to catch up on things, but please let me know if you have more specific questions or we can always discuss on phone now that I am out of hospital.

My cell is (213) 400-0725.

John

Get Outlook for iOS

**EXHIBIT E**

# Law Offices of Jeffrey E. McFadden, LLC
### 312 Prospect Bay Drive East
### Grasonville, MD  21638

**Jeffrey E. McFadden**
**(410) 490-1163**
**jmcfadden@jmcfaddenlaw.com**

September 20, 2021

**BY ELECTRONIC MAIL AND CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

John M. Pierce, Esq.
Ryan J. Marshall, Esq.
PierceBainbridge, P.C.
355 S. Grand Avenue, 44th Floor
Los Angeles, CA  90071

Re:     Love v. Hogan, et al., 1:21-cv-02029 (RDB)

Dear John and Ryan:

I have reviewed John's e-mail response to my letter of September 3 and have continued to follow press reports regarding John's recovery and issues that continue to linger as to a number of John's cases.  The continuing controversy surrounding the status of your firm and its lawyers has caused me to conclude that I cannot or should not make the required representations to the court necessary to proceed with this case.  Thus, I must advise you that I am withdrawing as local counsel in this case and, for the benefit of the client, ask that you find and substitute in new local counsel.  Of course, I will be happy to work with your new local counsel in getting the notice of substitution on file.

Should you be unable to substitute in new local counsel, I will move the court to withdraw.

I wish you both good luck with the case and with your future endeavors.

Very truly yours,

Jeffrey E. McFadden

**EXHIBIT F**

## Fw: Love v. Hogan, et al., 1:21-cv-02029 (RDB)

Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>

Wed 12/1/2021 12:08 PM

To: Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>

**From:** Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>
**Sent:** Thursday, September 23, 2021 2:29 PM
**To:** Ryan Marshall <rmarshall@piercebainbridge.com>; John Pierce <jpierce@piercebainbridge.com>
**Subject:** Re: Love v. Hogan, et al., 1:21-cv-02029 (RDB)

Dear John and Ryan,

I am writing to follow up on my letter to you of September 20. I have received two voice messages from Mr. Love, one of which I received today. It is clear from today's message that he is not aware of my intention to withdraw, and I ask that you please advise him of that promptly. If I do not hear back from you in the next few days that you have done so, I will let him know myself in very general terms and will ask him to contact you.

I want to remind you also that I have not served the summonses and complaint on any party and that, pursuant to FRCP 4(m), service must be effected within 120 days of the filing of the complaint.

Sincerely yours,


Jeff

**Jeffrey E. McFadden**
**Law Offices of Jeffrey E. McFadden, LLC**
**312 Prospect Bay Drive East**
**Grasonville, MD 21638**
**(410) 490-1163**
**jmcfadden@jmcfaddenlaw.com**

**EXHIBIT G**

## Fw: Love v. Hogan, et al., 1:21-cv-02029 (RDB)

Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>

Wed 12/1/2021 12:11 PM

To: Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>

**From:** John Pierce <jpierce@piercebainbridge.com>
**Sent:** Thursday, September 23, 2021 2:40 PM
**To:** Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>; Ryan Marshall <rmarshall@piercebainbridge.com>
**Subject:** Re: Love v. Hogan, et al., 1:21-cv-02029 (RDB)

Thanks Jeff. RM can you please handle and I will work on finding new local counsel.

Get Outlook for iOS

**From:** Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>
**Sent:** Thursday, September 23, 2021 11:29:36 AM
**To:** Ryan Marshall <rmarshall@piercebainbridge.com>; John Pierce <jpierce@piercebainbridge.com>
**Subject:** Re: Love v. Hogan, et al., 1:21-cv-02029 (RDB)

Dear John and Ryan,

I am writing to follow up on my letter to you of September 20. I have received two voice messages from Mr. Love, one of which I received today. It is clear from today's message that he is not aware of my intention to withdraw, and I ask that you please advise him of that promptly. If I do not hear back from you in the next few days that you have done so, I will let him know myself in very general terms and will ask him to contact you.

I want to remind you also that I have not served the summonses and complaint on any party and that, pursuant to FRCP 4(m), service must be effected within 120 days of the filing of the complaint.

Sincerely yours,


Jeff

**Jeffrey E. McFadden**
**Law Offices of Jeffrey E. McFadden, LLC**
**312 Prospect Bay Drive East**
**Grasonville, MD 21638**
**(410) 490-1163**
**jmcfadden@jmcfaddenlaw.com**

**EXHIBIT H**

## Fw: Love v. Hogan, et al., 1:21-cv-02029 (RDB)

Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>
Wed 12/1/2021 12:16 PM
To: Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>

**From:** Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>
**Sent:** Sunday, October 24, 2021 3:18 PM
**To:** John Pierce <jpierce@piercebainbridge.com>; Ryan Marshall <rmarshall@piercebainbridge.com>
**Subject:** Re: Love v. Hogan, et al., 1:21-cv-02029 (RDB)

Gents,

Where are we on this?

Regards.


Jeff

**Jeffrey E. McFadden**
**Law Offices of Jeffrey E. McFadden, LLC**
**312 Prospect Bay Drive East**
**Grasonville, MD 21638**
**(410) 490-1163**
**jmcfadden@jmcfaddenlaw.com**

---

**From:** John Pierce <jpierce@piercebainbridge.com>
**Sent:** Thursday, September 23, 2021 2:40 PM
**To:** Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>; Ryan Marshall <rmarshall@piercebainbridge.com>
**Subject:** Re: Love v. Hogan, et al., 1:21-cv-02029 (RDB)

Thanks Jeff. RM can you please handle and I will work on finding new local counsel.

Get Outlook for iOS

---

**From:** Jeffrey McFadden <jmcfadden@jmcfaddenlaw.com>
**Sent:** Thursday, September 23, 2021 11:29:36 AM
**To:** Ryan Marshall <rmarshall@piercebainbridge.com>; John Pierce <jpierce@piercebainbridge.com>
**Subject:** Re: Love v. Hogan, et al., 1:21-cv-02029 (RDB)

Dear John and Ryan,

I am writing to follow up on my letter to you of September 20. I have received two voice messages from Mr. Love, one of which I received today. It is clear from today's message that he is not aware of my intention to withdraw, and I ask that you please advise him of that promptly. If I do not hear back from you in the next few days that you have done so, I will let him know myself in very general terms and will ask him to contact you.

I want to remind you also that I have not served the summonses and complaint on any party and that, pursuant to FRCP 4(m), service must be effected within 120 days of the filing of the complaint.

Sincerely yours,


Jeff

**Jeffrey E. McFadden**
**Law Offices of Jeffrey E. McFadden, LLC**
**312 Prospect Bay Drive East**
**Grasonville, MD  21638**
**(410) 490-1163**
**jmcfadden@jmcfaddenlaw.com**

**EXHIBIT I**

# Law Offices of Jeffrey E. McFadden, LLC
**312 Prospect Bay Drive East**
**Grasonville, MD  21638**

Jeffrey E. McFadden
(410) 490-1163
jmcfadden@jmcfaddenlaw.com

November 17, 2021

**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Arthur M. Love
2064 Lake Grove Lane
Crofton, MD  21114

    **Re: Love v. Hogan, et al., 1:21-cv-02029 (RDB)**

Dear Mr. Love:

  As you may recall, I have been serving as local counsel in the above-referenced case.  As you may or may not know, in a letter dated September 20, 2021, I advised John Pierce and Ryan Marshall that I was withdrawing as local counsel and asked them to find and substitute-in new local counsel.  In an e-mail dated September 23, 2021, Mr. Pierce asked Mr. Marshall to advise you of my withdrawal and represented to me that he would work on finding new local counsel.

  By e-mail dated October 24, 2021, I inquired of both Mr. Pierce and Mr. Marshall as to the status of substituting in new local counsel.  As of the date of this letter, they have not responded.

  Thus, this letter shall constitute formal notice to you, pursuant to Local Rule 101.2.a) of the U.S. District Court for the District of Maryland that I intend to file a motion on Monday, November 29, 2021 in the above-referenced case to withdraw as your local counsel.  Unless Mr. Pierce substitutes in new local counsel before that date, I will advise the Clerk of the court in my motion that you will be proceeding without admitted local counsel.

  Finally, please be advised that the defendants in the above-referenced case have not been served with a summons and complaint, and that if they are not served within one hundred and twenty (120) days from August 11, 2021, the date the complaint was filed, the court may, on its own initiative, dismiss the case.  I have already made Messrs. Pierce and Marshall aware of this deadline.

Very truly yours,

Jeffrey E. McFadden

cc (by e-mail):       John Pierce, Esq.
                       Ryan Marshall, Esq.

# John Pierce's Capitol Riot Cases In Peril As He Fights COVID

*By [Ryan Boysen](#)*

Law360 (September 2, 2021, 6:58 PM EDT) -- After a week of confusion that made headlines nationwide and threatened to derail a swath of Jan. 6 Capitol riot cases, it appears that conservative firebrand attorney John Pierce is in fact in the hospital with COVID-19 and will soon be bringing on more lawyers to help with his immense caseload while he recovers.

Pierce, who represents more defendants charged with storming the U.S. Capitol than any other private attorney, has been incommunicado for more than a week amid conflicting reports that he's been hospitalized with a severe illness.

That sudden absence has led to friction with his clients, exasperation from judges and concern from the Department of Justice, which said in a filing on Monday that the situation has ground Pierce's 16 Capitol riot cases to "a standstill."

On Thursday, a person who is close to Pierce and familiar with the situation confirmed to Law360 that Pierce was in the hospital with a nasty case of COVID-19, but denied media reports that he had been on a ventilator or non-responsive.

Separately, at two Capitol riot hearings on Thursday, a young associate who works with Pierce told Judge Amit Mehta of the [U.S. District Court for the District of Columbia](#) that Pierce was bringing on two more attorneys to help with those cases. The specifics of Pierce's illness weren't discussed during the hearings.

That associate, Ryan Marshall, is facing [felony charges](#) for allegedly defrauding an elderly woman and has not yet passed the bar exam, meaning that he can't act as a fully authorized attorney on behalf of Pierce's clients. Nonetheless, Marshall has been appearing for Pierce at a string of hearings over the past week with the blessing of the judges involved, since no one else was available to do so.

The strange situation led Judge Mehta to approve the Department of Justice's request to

appoint an "advisory council" for Peter Schwartz, one of Pierce's Capitol riot clients, on Thursday. At another hearing before Judge Mehta on Thursday, for fellow Jan. 6 defendant and Pierce client Shane Jenkins, Judge Mehta kept a previously appointed public defender in place until Pierce is well enough to appear.

At a third hearing on Thursday, a Capitol riot defendant who had previously been represented by Pierce, Deborah Lee, told a magistrate judge that she was firing Pierce because it was difficult to communicate with him while he has been hospitalized.

That brings the number of Capitol riot defendants represented by Pierce to 16, which is still far more than any other private attorney. Even before Pierce's illness, some detractors said it would be impossible for a single lawyer to effectively defend so many of those complicated and potentially high-stakes cases.

The events of the past few days appeared to lend credence to those concerns, when Pierce's absence caused so much chaos and confusion that on Monday the Department of Justice finally called on judges to take "any steps" necessary if things aren't cleared up soon.

It all began last week, on Tuesday, when Pierce missed a hearing for a Capitol riot client due to what Marshall told the court was a "conflict." Later that same day, Marshall told prosecutors that he'd just heard that Pierce had been rushed to the hospital after an "accident." The next morning, Marshall reportedly told a judge at another hearing that Pierce was "hospitalized with COVID-19, on a ventilator and non-responsive."

In a brief interview on Thursday, Marshall said he doesn't believe that he used those exact words. The statement was taken out of context, he said, as he only meant to convey that he hadn't been able to get ahold of Pierce.

Nonetheless, that statement kicked off frenzied speculation from many Capitol riot watchers, as well as a round of headlines and Twitter posts gleefully mocking the outspokenly anti-vaccine Pierce for contracting COVID-19.

Later that evening a friend of Pierce's, Brody Womack, released a statement that further

muddied the waters, saying Pierce was "suffering from dehydration and exhaustion," symptoms that "might be related to COVID-19."

The next morning, on Thursday, Marshall told a judge at yet another hearing that he was receiving conflicting information about Pierce, who had been incommunicado for days at that point.

At the same time, the wife of one of Pierce's Jan. 6 clients, Kenneth Harrelson, complained in a fundraising email about how frustrating it was being unable to get ahold of Pierce for the past few days.

Then on Monday, the Department of Justice finally weighed in, calling Pierce's weeklong absence untenable in light of the fact that Marshall has not passed the bar and therefore can't act as a licensed attorney on behalf of Pierce's clients.

"The United States thus finds itself in a position where [Pierce's Jan. 6 clients] appear to be effectively without counsel," the DOJ wrote, adding that the cases are "at a standstill."

That filing, in turn, sparked a wave of headlines at many of the nation's largest news outlets, leading to further speculation about what was happening and whether Pierce — who has been known to occasionally disappear for days when he was struggling with substance abuse issues several years ago — was lying about being sick with COVID-19.

Pierce himself did not respond to a request for comment on Thursday, and several people close to him declined to comment on the record.

The events of this week are just the latest in a series of high-profile ups and downs for Pierce over the past few years. He has boomeranged between various conservative causes ever since his former law firm, Pierce Bainbridge Beck Price & Hecht LLP, collapsed in stunning fashion roughly a year ago.

The $70 million debt left over from that collapse has continued to dog Pierce, leading critics and even prosecutors to accuse him of trying to spin his conservative caseload into a money machine by raking in crowdfunded donations.

Pierce went to Harvard Law School and for years was a respected litigator and up-and-comer in the world of BigLaw, making partner at Quinn Emanuel Urquhart & Sullivan LLP before jumping to Latham & Watkins LLP and then briefly holding a leadership role at K&L Gates.

Personal problems and increasingly erratic behavior led Pierce to burn bridges with those firms, however, according to interviews with several former colleagues, and in 2017 he set up his own firm, which later became known as Pierce Bainbridge Beck Price & Hecht.

Pierce Bainbridge experienced explosive growth for more than a year, reaching roughly 70 attorneys on staff by mid-2019, before abruptly collapsing amid a raft of partner departures, massive debt and a financial scandal, in which Pierce pledged his firm's future revenues to multiple lenders. Pierce previously told Law360 that his own substance abuse issues had also contributed to the collapse.

After attending rehab, Pierce vowed to rebuild in early 2020, and created a new firm known simply as Pierce Bainbridge PC. Shortly thereafter, in the summer of 2020, he helped launch the #FightBack Foundation alongside conservative firebrand attorney Lin Wood.

The #FightBack Foundation initially vowed to "take the far left to court for their abuses of power," an apparent reference to defamation suits filed against it, but the organization quickly shifted gears after Pierce began representing Kyle Rittenhouse just a few days after it was founded.

Rittenhouse is accused of killing two men and wounding another in an August 2020 shooting at a Black Lives Matter protest in Kenosha, Wisconsin. Rittenhouse quickly became a polarizing figure, with left-wing detractors labeling him a murderous vigilante and right-wing supporters styling him as a Second Amendment icon who acted in self-defense.

Despite having no background as a criminal attorney, Pierce began representing Rittenhouse and raising millions of dollars through #FightBack on the 17-year-old's behalf before things fell apart.

The #FightBack Foundation managed to raise Rittenhouse's $2 million bail and free him before trial, but Pierce parted ways with the organization as Wood began focusing more intently on the presidential election last fall. In December, Pierce withdrew from Rittenhouse's criminal case after prosecutors questioned the ethics of Pierce raising millions for his client despite being deeply in debt himself. Then in February, Rittenhouse fired Pierce altogether.

Rittenhouse's new attorneys now claim that Pierce's actions interfered with Rittenhouse's criminal defense case and have accused Pierce of pocketing much of the money raised on Rittenhouse's behalf.

Pierce has hotly disputed those claims.

After parting ways with #FightBack and Rittenhouse, Pierce began representing several defendants accused of taking part in the Jan. 6 Capitol riot, in which hundreds of supporters of President Donald Trump violently stormed the Capitol in Washington.

As part of that work, Pierce founded the National Constitutional Law Union in June, calling it an alternative to the well-known American Civil Liberties Union, which Pierce claims has "lost its way" by embracing "the radical left."

On Twitter, Pierce has leaned into several fringe theories while defending the Capitol riot cases. He's been especially vocal about suggesting that his clients and the rest of the defendants have been set up by the Federal Bureau of Investigation. That same theory has been floated by Fox News host Tucker Carlson, who has previously invited Pierce on his show to discuss the Rittenhouse case.

Pierce has vowed to seek security camera footage and other evidence from the government that might bolster those FBI setup claims.

Some critics have questioned his approach, however. National security journalist Marcy Wheeler, for example, recently wrote on her widely read blog that handling 17 Capitol riot cases "would be an impossible feat even for the most experienced defense attorney, and harder still for a civil attorney like Pierce."

--Editing by Karin Roberts.