# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ARTHUR M. LOVE,                    *

     *Plaintiff*,              *

    v.                           *   No. 1:21-CV-02029

LARRY HOGAN, *et al.*,             *

     *Defendants*.             *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION TO DISMISS

BRIAN E. FROSH
Attorney General of Maryland

ROBERT A. SCOTT
Fed. Bar No. 24613
JAMES N. LEWIS
Fed. Bar No. 30220
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-7055
(410) 576-6955 (facsimile)
rscott@oag.state.md.us
jlewis@oag.state.md.us

Attorneys for Defendants

December 22, 2021

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

ALLEGATIONS IN THE COMPLAINT .................................................................... 1

    Mr. Love Campaigned for Governor Hogan, Joined His Administration, and
    Served as a Political Appointee ................................................................................ 1

    Mr. Love Posted Memes on Facebook ..................................................................... 1

    Mr. Love's Posts Attracted Wide Attention ............................................................ 3

    Mr. Love Was Terminated on August 30, 2020 ....................................................... 3

    Mr. Love Filed This Lawsuit .................................................................................... 4

ARGUMENT .................................................................................................................. 5

I.      LEGAL STANDARD ...................................................................................... 5

    Rule 12(b)(1) ............................................................................................................ 5

    Rule 12(b)(6) ............................................................................................................ 5

II.    ELEVENTH AMENDMENT IMMUNITY BARS ALL OF MR. LOVE'S
    CLAIMS AGAINST THE STATE AND STATE EMPLOYEES SUED IN THEIR
    OFFICIAL CAPACITIES. ................................................................................ 6

III.   THE DEFENDANTS ARE IMMUNE FROM MR. LOVE'S STATE LAW
    CLAIMS. ......................................................................................................... 7

IV.   THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN
    BE GRANTED. ................................................................................................ 9

        A.    The Complaint Alleges No Actionable Conduct by Six of the Seven
                Named Defendants. ............................................................................ 9

        B.    Mr. Love's 42 U.S.C. § 1983 First Amendment Claim Fails as a
                Matter of Law. ................................................................................. 11

1.  Mr. Love Fails to Satisfy the Connick-Pickering Test Because the Memes He Posted Adversely Impacted His Working Environment and Ability to Provide Services to the Public. ........... 12

2.  Even if Mr. Love Satisfied the Connick-Pickering Test, His Claim Still Fails Because His Position Fits the Elrod-Branti Doctrine. .................................................................................... 15

3.  If this Court Does Not Conclude the Elrod-Branti Doctrine Applies, Then Defendants are Entitled to Qualified Immunity. ...... 17

C.  Mr. Love's 42 U.S.C. § 1985 Claim Fails Because He Has Not Pleaded a Conspiracy. ................................................... 19

D.  Mr. Love's 42 U.S.C. § 1986 Claim Fails Because His 42 U.S.C. § 1985 Claim Fails. ....................................................... 21

E.  Mr. Love's Article 40 Claim Is Read In Pari Materi With His First Amendment Claim, and Fails For The Same Reasons. .............................. 21

F.  Mr. Love's Federal Wrongful Discharge Claim Does Not Exist. ............... 22

G.  Mr. Love's State Wrongful Discharge Claim Fails For The Same Reasons As His Article 40 Claim. ................................ 23

V.  MR. LOVE HAS FAILED TO SERVE DEFENDANTS FOR THE TORT-BASED CLAIMS, AND HE HAS NOT SERVED MATTHEW CLARK. ............................ 24

VI.  IF ANY CAUSE OF ACTION SURVIVES, MR. LOVE'S CLAIM FOR PUNITIVE DAMAGES SHOULD BE DISMISSED. ......................................... 25

CONCLUSION ............................................................................................... 26

## INTRODUCTION

Arthur M. Love, a political appointee in the Hogan administration, was terminated from his job after posting divisive memes in a Facebook group, which posits itself as a political group for discussion of Maryland and national politics.  Mr. Love now sues the State and several government officials for alleged constitutional and tort-based violations associated with his termination.  As demonstrated below, all of Mr. Love's claims fail as a matter of law.

## ALLEGATIONS IN THE COMPLAINT

### Mr. Love Campaigned for Governor Hogan, Joined His Administration, and Served as a Political Appointee

Mr. Love alleges that he has been connected to Governor Hogan since his first gubernatorial campaign. ECF 1 at ¶ 15.  Immediately after winning the election, "Governor Hogan appointed Mr. Love" to serve as "Deputy Director of Community Initiatives."  ECF 1 at ¶ 16; Md. Code Ann., State Pers. & Pens. § 6-405 (LexisNexis 2015).  In this role, Mr. Love claims to have "earned a reputation as an exemplary and dedicated public servant."  ECF 1 at ¶ 17.

### Mr. Love Posted Memes on Facebook

On Friday, August 28, 2020, Mr. Love was on a Facebook page called "Inside Maryland Politics" discussing "the civil unrest occurring in Kenosha following the police shooting of Jacob Blake on August 23, 2020."  ECF 1 at ¶ 20.  Mr. Love, using his personal Facebook account, posted several "memes" in the comment section of a post on the Inside

Maryland Politics Facebook page.[1]  ECF 1 at ¶ 24; Exhibit A: Mr. Love's Social Media Posts.[2]  Mr. Love posted roughly 17 memes.  One example of these memes includes an image of Leonardo DiCaprio from his role in the 2012 film *Django Unchained*, laughing and holding a drink with the caption, "WHEN YOU SEE A SKATEBOARD WIELDING ANTIFA CHICKENSHIT GET SMOKED BY AN AR TOTING 17 Y.O."  Another shows an individual who was shot by Kyle Rittenhouse with the caption, "WHEN YOU GET 2ND PLACE IN WISCONSINS ANNUAL QUICK DRAW COMPETITION."  The

---

[1] A "meme" is "an amusing or interesting picture, video, etc., that is spread widely through the Internet."  MERRIAM-WEBSTER, https://www.merriam-webster.com/ dictionary/meme (last visited Dec. 16, 2021).

[2] Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment.  *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).  In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity."  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citation omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 558 (2017); *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Kensington Volunteer Fire Dep't v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012).  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'"  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).  "[C]ourts have found integral the allegedly fraudulent document in a fraud action, the allegedly libelous magazine article in a libel action, and the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute."  *Fisher v. Maryland Dep't of Pub. Safety & Corr. Servs.*, Civil No. JFM 10-CV-0206, 2010 WL 2732334, at *2 (D. Md. July 8, 2010) (quotation and citations omitted).  Likewise, Mr. Love claims here that when he posted the memes in Exhibit A, it was speech that was protected by the First Amendment.  Therefore, Mr. Love's alleged speech is integral to his claim and can be considered without converting this motion from a motion to dismiss to one for summary judgment.

meme that arguably received the most attention shows a police officer giving two thumbs up with the caption, "DON'T BE A THUG IF YOU CANT TAKE A SLUG!"  Mr. Love alleges that the memes he posted "discuss Mr. Rittenhouse's case and support Mr. Rittenhouse's self-defense rights" and, according to Mr. Love, conveyed a message that Mr. Rittenhouse "may have been justified under the doctrine of self-defense."  ECF 1 at ¶ 25.  Others in the Facebook group disagreed with Mr. Love, which "prompt[ed him] to exit the conversation."  ECF 1 at ¶ 26.

### Mr. Love's Posts Attracted Wide Attention

The next day, Saturday, August 29, 2020, Mr. Love woke up with press at his home because his posts had attracted wide attention on the internet.  ECF 1 at ¶ 27.  This prompted Mr. Love to call his supervisor, Steven McAdams.  ECF 1 at ¶ 27.  Mr. McAdams told Mr. Love "that he need not worry and that they would 'get through this.'"  ECF 1 at ¶ 28.  Mr. McAdams put out a public statement later that same day to assert that "'[t]hese divisive images and statements are inconsistent with the mission and core values of the Office of Community Initiatives.  Earlier today, *I relieved this employee of his duties*.'"  ECF 1 at ¶ 33 (emphasis added).

### Mr. Love Was Terminated on August 30, 2020

"On August 30 at or about 8:38 am, Mr. Love received a phone call from McAdams informing Mr. Love that he had been terminated due to his Facebook posts on Mr. Rittenhouse's potential justification under the doctrine of self-defense."  ECF 1 at ¶ 31; *see*

*also* ECF 1 at ¶¶ 18, 19.  Mr. Love was emailed a copy of his termination on Monday, August 31, 2020.  ECF 1 at ¶ 32; Exhibit B: Letter Terminating Mr. Love.[3]

### Mr. Love Filed This Lawsuit

Nearly one year later, Mr. Love filed this lawsuit asserting six claims related to his termination.  Mr. Love named eight defendants in his lawsuit, but only identified five of the defendants in his definition of "Defendants."  ECF 1 at p. 2 (Mr. Love "does hereby sue Defendants Steven McAdams, Allison Mayer, Larry Hogan, Mana (sic) Vaidya and the State of Maryland (collectively, Defendants)").  Each of the named defendants has been sued in their official and individual capacities.  ECF 1 at ¶¶ 2-8.  Specifically, Mr. Love brings four free speech retaliation claims in violation of 42 U.S.C. § 1983 (Count I), 42 U.S.C. § 1985 (Count II), 42 U.S.C. § 1986 (Count III), and Article 40 of the Maryland Declaration of Rights (Count IV).  He also brings, and two tort-based causes of action for wrongful discharge under federal law (Count V) and state law (Count VI).  As demonstrated below, all of these claims fail as a matter of law.

---

[3] The adverse action that Mr. Love claims occurred as a result of his allegedly protected speech was his termination.  For the same reason that Mr. Love's Facebook posts do not convert this motion to dismiss into one for summary judgment, the letter notifying Mr. Love of his termination is integral and can be considered without converting this motion.

## ARGUMENT

### I.   LEGAL STANDARD

**Rule 12(b)(1)**

The burden of proving subject-matter jurisdiction is on the plaintiff.  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  At the motion to dismiss stage, "it is the court's task to evaluate whether the pleadings allege[] facts that affirmatively and plausibly suggest" that the Court has jurisdiction.  *Piper v. Meade & Assocs., Inc.*, 282 F. Supp. 3d 905, 907 (D. Md. 2017).  The defense of sovereign immunity is a jurisdictional bar.  "'[S]overeign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'"  *Cunningham v. General Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)).

**Rule 12(b)(6)**

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although the Court must accept as true the well-pleaded factual allegations in a complaint, the Court is not required to accept conclusory allegations or legal conclusions disguised as factual allegations.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 246 (4th Cir. 2011).  The complaint must contain direct and plausible allegations respecting all material elements necessary to sustain

5

recovery under a viable legal theory.  *Twombly*, 550 U.S. at 570.  Plaintiff's claims should

be dismissed under this familiar legal standard.

## II.   ELEVENTH AMENDMENT IMMUNITY BARS ALL OF MR. LOVE'S CLAIMS AGAINST THE STATE AND STATE EMPLOYEES SUED IN THEIR OFFICIAL CAPACITIES.

Mr. Love has sued the State of Maryland and several government employees.  Those

employees have been sued in their individual and official capacities.  ECF 1 at ¶¶ 2-8.  For

each cause of action, Mr. Love seeks money damages in the form of "compensatory and

punitive damages against Defendants, jointly and severally, in an amount to be determined

at trial, together with reasonable attorney's fees, expert witness fees, and other costs

permitted by 42 U.S.C. § 1988."  ECF 1 at pp. 14, 17-21.  The complaint also contains a

prayer for relief, which seeks "(i) An award of compensatory, special, and punitive

damages in appropriate amounts to be established at trial; (ii) An award of costs associated

with this action; and (iii) Any and all other or further relief that this Court deems just and

proper."  ECF 1 at p. 21.

The Eleventh Amendment bars suits for damages in federal court against State

agencies unless the State has consented or Congress has abrogated the State's immunity.

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996).  Mr. Love's claims under 42

U.S.C. § 1983 create "a remedy for violations of federal rights committed by persons acting

under the color of state law."  *Howlett v. Rose*, 496 U.S. 356, 358 (1990).  The State of

Maryland is not a "person" within the meaning of § 1983.  *Id.* at 365.  Moreover, each of

the named defendants—to the extent that they have been sued in their official capacity—

6

are immune because "a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. . . . As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted).

This framework is also true for Mr. Love's claims arising pursuant to 42 U.S.C. §§ 1985, 1986.  The State and the official capacity claims should be dismissed because those parties are immune.  *Borkowski v. Baltimore County*, 492 F. Supp. 3d 454, (D. Md. 2020) (holding that the State and individuals sued in his or her official capacity "are 'immune from claims' under 42 U.S.C. §§ 1983, 1985, and 1986 as instruments of the state."). Therefore, all of Mr. Love's claims against the State and against State employees being sued in their official capacities in Counts I, II, III, IV, V and VI are barred by the Eleventh Amendment and should be dismissed.

## III.   THE DEFENDANTS ARE IMMUNE FROM MR. LOVE'S STATE LAW CLAIMS.

Counts IV and VI of Mr. Love's Complaint purport to assert tort claims for violations of Article 40 of the Maryland Declaration of Rights and for wrongful discharge. The Maryland Tort Claims Act ("MTCA") applies to traditional tort-based causes of action, but also to constitutional torts like the claim for allegedly violating Article 40 of the Maryland Declaration of Rights.  *Lee v. Cline*, 384 Md. 245, 266 (2004).  The State of Maryland and the individually-named defendants—to the extent they are sued in their official capacities—should be dismissed because the State is immune from suit in federal court.  Tort claims against the State and State personnel sued in their official capacities can

only be brought in State court and, therefore, the Eleventh Amendment preserves the State's immunity from such claims in federal court.  Md. Code Ann., State Gov't 12-104(a)(1) (LexisNexis 2014); *Weller v. Department of Soc. Servs.*, 901 F.2d 387, 397-98 (4th Cir. 1990) ("The waiver of sovereign immunity in the Maryland Tort Claims Act clearly limits the state's waiver of immunity to actions brought in the Maryland state courts.").

Moreover, Mr. Love did not affirmatively plead satisfaction with the MTCA.  The MTCA requires that the State be notified before a plaintiff may file a tort suit against the State.  State Gov't § 12-106(b).  Not only must notice be given, but a plaintiff must also affirmatively plead satisfaction of the notice requirement in the complaint.  *See Littleton v. Maryland*, No. JKB-17-3164, 2018 WL 1123694, at *6 (D. Md. Mar. 1, 2018) (noting that an MTCA claimant must affirmatively plead satisfaction of the condition precedent) (citing *Hansen v. City of Laurel*, 420 Md. 670 (2011)).

Additionally, Mr. Love has improperly sued individual State employees.  The MTCA generally "substitutes the liability of the State for the liability of the state employee."  *Lee*, 384 Md. at 262.  "[S]tate personnel are thus immune from suit and from liability in tort for acts or omissions committed within the scope of their public duties and without malice or gross negligence . . . ."  *Barbre v. Pope*, 402 Md. 157, 173-74 (2007); *see also* Md. Code Ann., Cts. & Jud. Proc. § 5-522(b) (LexisNexis 2020); State Gov't § 12-105.  The complaint does not allege gross negligence, but it does broadly allege malice.  Allegations of malice require "well-pled facts" demonstrating "conduct 'characterized by

8

evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud.'" *Barbre*, 402 Md. at 182 (quoting *Lee*, 384 Md. at 268).

Mr. Love admits that "[d]efendants were acting within the scope of their employment or agency with the State of Maryland when [d]efendants intentionally terminated Mr. Love in response to his private social media posts supporting Mr. Rittenhouse's right to self-defense." ECF 1 at ¶ 88, *see also* ¶ 110. Although Mr. Love twice alleges that "[d]efendants acted intentionally and with malice towards Mr. Love to deny his freedoms protected by the First Amendment when they terminated his employment," ECF 1 at ¶¶ 77, 97, the allegations are plainly insufficient. "Merely asserting that an act was done maliciously, or without just cause, or illegally, or with wanton disregard, or reckless, or for improper motive does not suffice. To overcome a motion raising governmental immunity, the plaintiff must allege with some clarity and precision those facts which make the act malicious." *Elliott v. Kupferman*, 58 Md. App. 510, 528 (1984). The complaint falls very far short of this requirement and, thus, the individually-named defendants are immune. Hence, Counts IV and Count VI should be dismissed.

## IV.   THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A.   The Complaint Alleges No Actionable Conduct by Six of the Seven Named Defendants.

The complaint is completely devoid of substantive allegations about Lt. Governor Rutherford, Allison Mayer, Mona Vaidya, Shareese Churchill, and Matthew A. Clark. The complaint simply fails to allege any conduct by these individuals, let alone actionable

misconduct.   There are broad conclusory statements about the "defendants" in the complaint, but nothing specific about any of the people named above.   *See, e.g.* ECF 1 at ¶ 29 ("Instead, upon information and belief, on either August 28 or 29, one or more of the Defendants decided to, and did, terminate Mr. Love's employment because of his comments about Rittenhouse's right to self-defense.").   For an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights.   *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).   The wholesale failure to allege facts showing that each of these defendants took action that violated Mr. Love's rights is fatal to his claims.   As a result, the claims against Lt. Governor Rutherford, Allison Mayer, Mona Vaidya, Shareese Churchill, and Matthew A. Clark should be dismissed with prejudice.

The only two defendants with any substantive allegations about them are Governor Hogan and Steven McAdams.   But, the substantive allegations against Governor Hogan are irrelevant to the claims asserted by Mr. Love.   The complaint only briefly discusses Governor Hogan and it is related to Mr. Love's relationship with the governor that led to his appointment as Deputy Director of Community Initiatives.   ECF 1 at ¶¶ 15-16. Specifically, Mr. Love alleges that "Mr. Love led Governor Hogan's statewide field operations during Hogan's first gubernatorial campaign" and that "[o]n January 21, 2015, Governor Hogan appointed Mr. Love Deputy Director of Community Initiatives."   ECF 1 at ¶¶ 15-16.   Other than the broad allegations about "defendants," there is nothing else in the complaint specific to Governor Hogan.   Mr. Love's claims against Governor Hogan

should similarly be dismissed with prejudice because Mr. Love failed to allege any relevant facts about Governor Hogan.

**B.     Mr. Love's 42 U.S.C. § 1983 First Amendment Claim Fails as a Matter of Law.**

In Count I, Mr. Love claims that his termination was unlawful retaliation in violation of his First Amendment right to freedom of speech.   To establish a First Amendment retaliation claim, Mr. Love is required to show that (1) his "speech was protected," (2) "defendant's alleged retaliatory action adversely affected the [] constitutionally protected speech," and (3) that there is "a causal relationship" between the protected speech and the alleged retaliatory action.  *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir. 2000) (citations and quotations omitted).

While Facebook posts are generally considered speech, *see Bland v. Roberts*, 730 F.3d 368, 385-86 (4th Cir. 2013), "the government may impose certain restraints on its employees' speech and take action against them that would be unconstitutional if applied to the general public." *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (quotations omitted).  The balancing test for analyzing the rights of public employees to speak as private citizens is colloquially known as the Connick-Pickering test. *Bland*, 730 F.3d at 373-74.  There is an exception to the Connick-Pickering test—called the Elrod-Branti doctrine—that allows a policymaking employee to be dismissed based upon the employee's political affiliation.  *Id.* at 374-75.  Mr. Love's claims fail to satisfy the Connick-Pickering test, but even if they did not, the Elrod-Branti doctrine applies as a matter of law.

11

1.    **Mr. Love Fails to Satisfy the Connick-Pickering Test
      Because the Memes He Posted Adversely Impacted His
      Working Environment and Ability to Provide Services to
      the Public.**

The Connick-Pickering test applies when a public employee claims that they were
subject to an adverse employment action based upon speech protected by the First
Amendment.   The balancing test requires courts to consider (1) "whether the public
employee was speaking as a citizen on a matter of public concern," (2) "whether the
employee's interest in speaking upon the matter of public concern outweighed the
government's interest in managing the working environment," *Durham v. Jones*, 737 F.3d
291, 299 (4th Cir. 2013), and whether it impacted the employer's "operation of the
workplace and providing efficient services to the public," *Thompson v. Belton*, Civil Action
No. ELH-18-3116, 2018 WL 6173443, at *15 (D. Md. Nov. 26, 2018); *see also Durham*,
737 F.3d at 299, and (3) "whether the employee's speech was a substantial factor in" the
decision to terminate the employee, *see Durham*, 737 F.3d at 299.

Mr. Love fails to satisfy the second factor of the Connick-Pickering test and it is
fatal to his claims.  A court must "balance the First Amendment interest of the employee
against 'the interest of the State, as an employer, in promoting the efficiency of the public
services it performs through its employees.'"  *Borough of Duryea v. Guarnieri*, 564 U.S.
379, 386 (quoting *Pickering v. Board of Educ. of Township High School Dist. 205*, 391
U.S. 563, 568 (1968)).  To do so, a court "must consider the context in which the speech
was made, including the employee's role and the extent to which the speech impairs the

efficiency of the workplace." *Bland*, 730 F.3d at 374.  The Fourth Circuit has identified

several factors to help guide this analysis, including whether the employee's speech:

(1)    impaired the maintenance of discipline by supervisors;

(2)    impaired harmony among coworkers;

(3)    damaged close personal relationships;

(4)    impeded the performance of the public employee's duties;

(5)    interfered with the operation of the institution;

(6)    undermined the mission of the institution;

(7)    was communicated to the public or to coworkers in private;

(8)    conflicted with the responsibilities of the employee within the institution;

(9)    abused the authority and public accountability that the employee's role entailed.

*Ridpath v. Board of Governors Marshall University*, 447 F.3d 292, 317 (4th Cir. 2006).

The level of protection for an employee is measured on a sliding scale.  An employee

"who has a confidential, policymaking, or public contact role and speaks out in a manner

that interferes with or undermines the operation of the agency, its mission, or its public

confidence, enjoys substantially less First Amendment protection than does a lower level

employee." *McVey v. Stacy*, 157 F.3d 271, 278 (4th Cir. 1998).

Mr. Love admits in his complaint that he was a political appointee of Governor

Hogan.  ECF 1 at ¶ 16.  Indeed, his role in the Hogan administration is what caused his

comments to become noticed.  ECF 1 at ¶ 27 ("Mr. Love awoke to the press at his home").

When Mr. McAdams released a public statement about Mr. Love, he acknowledged that

"[t]hese divisive images and statements are inconsistent with the mission and core values of the Office of Community Initiatives," *see* ECF 1 at ¶ 33, which tracks the Fourth Circuits analysis in these situations, including whether it "impeded the performance of the public employee's duties," "interfered with the operation of the institution," and "undermined the mission of the institution," *see Ridpath*, 447 F.3d at 317.

Although Mr. Love only pleads his job title and not his job responsibilities, *see* ECF 1 at ¶ 17, the expectation for significant community involvement is readily apparent from his job title. Mr. Love was the "Deputy Director of *Community Initiatives*" for the Hogan administration. ECF 1 at ¶ 17 (emphasis added). For someone whose job is focused on community initiatives, when Mr. Love posted "divisive images and statements," *see* ECF 1 at ¶ 33, it seriously and negatively "abused the authority and public accountability that the employee's role entailed," *see Ridpath*, 447 F.3d at 317.[4] The memes directly impacted Mr. Love's ability to do his job, but more broadly, it "undermined the mission of the institution." *Id.*

The only defendant that Mr. Love claims to have taken adverse action against him is Mr. McAdams. ECF 1 at ¶¶ 31-32. The thin facts pleaded by Mr. Love are insufficient to state a claim against Mr. McAdams because it fails to satisfy the Connick-Pickering test

---

[4] While Mr. Love did not plead it, posting these memes also "impaired harmony among coworkers" and "damaged close personal relationships." *Ridpath*, 447 F.3d at 317. He does, however, admit that on the evening he posted the memes, it caused others in the conversation to become "aggrieved with Mr. Love's position." ECF 1 at ¶ 26. Apparently, those individuals were so aggrieved that it caused "Mr. Love to exit the conversation." ECF 1 at ¶ 26.

14

as a matter of law.  Mr. Love was an appointee of the Hogan administration, *see* ECF 1 at ¶ 16, who posted memes that amounted to "divisive images and statements" that "are inconsistent with the mission and core values of the Office of Community Initiatives," *see* ECF 1 at ¶ 33.  Mr. Love's claim in Count I under 42 U.S.C. § 1983 fails to state a claim upon which relief can be granted and should be dismissed with prejudice.

> **2.    Even if Mr. Love Satisfied the Connick-Pickering Test, His Claim Still Fails Because His Position Fits the Elrod-Branti Doctrine.**

When a public employee is terminated for their political beliefs and affiliation, "the balancing test above does not necessarily apply."  *Thompson*, 2018 WL 6173443, at *19. The Elrod-Branti doctrine is "a narrow exception to the Free Speech Clause's general protection of an employees' rights."  *Id.* (citing to *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980)).  This doctrine applies when an employee in a "policymaking position[] is subject to dismissal based on political affiliation."  *Id.*  To pursue this, the employer needs to show "'that party affiliation is an appropriate requirement for the effective performance of the public office involved.'"  *Id.* (quoting *Branti*).  The onus is on the employer to establish that a particular employee comes within the exception to the general rule.  *Id.* at *20.

The Fourth Circuit established a two-part test for determining whether a position fits the Elrod-Branti doctrine.  First, the court considers whether "the position at issue, no matter how policy-influencing or confidential it may be, relates to partisan political interests . . . or concerns."  *Nader v. Blair*, 549 F.3d 953, 959 (4th Cir. 2008) (internal citation and quotation omitted).  This means that a court must determine whether the

plaintiff's position involves "government decisionmaking on issues where there is room for political disagreement on goals and their implementation." *Bland*, 770 F.3d at 375. To do this, the court examines "the issues dealt with by the employee at a very high level of generality." *Id.*

With the exception of Mr. Love's allegation that he "has organized numerous charitable events for citizens of Maryland," *see* ECF 1 at ¶ 17, Mr. Love failed to plead his job responsibilities. To fill in the gap, attached to this motion is a copy of his position description. Exhibit C: Mr. Love's Position Description.[5] Mr. Love's position description is replete with examples showcasing that his job "relates to partisan political interests . . . or concerns." *Nader*, 549 F.3d at 959. Perhaps the most overt example comes about with respect to the Governor's Commission on Caribbean Affairs, for which Mr. Love was required to "[i]nitiate[], develop[] and implement[] goals, policies and procedures for the Commission as required by the Annotated Code of Maryland" and to have daily contact with the Caribbean Community. Ex. C at 2-3. Indeed, less partisan jobs have been found to satisfy the Elrod-Branti doctrine. *Flynn v. City of Boston*, 140 F.3d 42, 44-46 (1st Cir. 1998) (finding that associate director positions in a community social-services agency related to partisan political interest); *Vona v. County of Niagara*, 119 F.3d 201, 208 (2d Cir. 1997) (determining that social services attorney position was related to "political and ideological concerns"); *Marnocha v. City of Elkhart*, 400 F. Supp. 3d 735, 744 (N.D. Ind.

---

[5] For the same reasons that his Facebook posts and termination letter are integral to his complaint, so too is his position description, because it has a direct impact on his rights as a public employee who was appointed to his position by the governor.

2019) (concluding that assistant city attorney "was in a policymaking position" and, therefore, "is exempt from First Amendment protection.").

Second, the court must "examine the particular responsibilities of the position to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation [or political allegiance] is an equally appropriate requirement." *Id.* The reasoning for this framework is to allow employment of "top level state employees on an at-will basis, and to reposition these employees as [] necessary in order to further the agenda of the administration." *Stott v. Haworth*, 916 F.2d 134, 142 (4th Cir. 1990). Notably, the state's designation of an employee as political "creates a presumption at law that discharge or demotion was proper." *Id.* Mr. Love admitted that he was a political appointee of the governor who was "appointed" to be the Deputy Director of Community Initiatives, *see* ECF 1 at ¶ 16, thus creating a presumption that he served in a political position. *See also* State Pers. & Pens. § 6-405. Because Mr. Love's position fits within the Elrod-Branti doctrine, his First Amendment claims should be dismissed with prejudice.

### 3. If this Court Does Not Conclude the Elrod-Branti Doctrine Applies, Then Defendants are Entitled to Qualified Immunity.

Public officials are protected "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (quotation omitted). To be successful, the public official must show either that their conduct did not violate a constitutional right, or that the right at issue was not "clearly

17

established in the specific context of the case." *Merchant v. Bauer*, 677 F.3d 656, 662 (4th Cir. 2012). For a constitutional right to be "clearly established," there must be existing appellate precedent to place "the statutory or constitutional question beyond debate" so that it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks and alterations omitted). Moreover, the right and the contours of the alleged right must be defined with a high level of particularity. *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004) ("A preliminary task is to define the constitutional right at issue 'at a high level of particularity.'").

In circumstances like this, many courts that face a challenging question of whether a constitutional right was clearly established will grant qualified immunity to the government official. *Bland*, 730 F.3d at 391 (concluding that the "Sheriff is entitled to qualified immunity concerning [plaintiffs'] claims because in December 2009 a reasonable sheriff could have believed he had the right to choose not to reappoint his sworn deputies for political reasons"); *Borzilleri v. Mosby*, 874 F.3d 187, 193 n.1 (4th Cir. 2017) (recognizing that the district court granted qualified immunity to a prosecutor and noting "that the fact that every court of appeals to consider the issue is in agreement casts serious doubt on [plaintiff's] contention that [defendant's] actions violated 'clearly established' federal law.'"); *Claridy v. Anderson*, ELH-13-02600, 2015 WL 1022401, at *21 (D. Md. Mar. 9, 2015) (concluding that a deputy sheriff was entitled to qualified immunity, in part, because the Fourth Circuit in *Bland*, 730 F.3d at 391-93 left it unclear whether a sheriff could terminate a deputy for political reasons); *McEvoy v. Spencer*, 124 F.3d 92, 104-05

18

(2d Cir. 1997) (concluding that defendants were entitled to qualified immunity because it was objectively reasonable to believe that plaintiff's position fell with the Elrod-Branti doctrine and that the law was unsettled as to whether plaintiff's policymaking status controlled the disposition of his free speech retaliation claim).

Mr. Love's postings impacted his ability to continue fulfilling his work for the State. Indeed, the official public statement the day after Mr. Love's posts attracted wide attention was that "'[t]hese divisive images and statements are inconsistent with the mission and core values of the Office of Community Initiatives." ECF 1 at ¶ 33. It certainly would be reasonable for Mr. McAdams to believe that Mr. Love—an appointee of the governor and Deputy Director of Community Initiatives—fell within the exception created by the Elrod-Branti doctrine. *See also* State Pers. & Pens. § 6-405; Ex. B ("you were terminated from your Political Special Appointment Position"). As the Supreme Court has explained, "[i]f judges . . . disagree on a constitutional question, it is unfair to subject [the public official] to money damages for picking the losing side of the controversy." *Wilson v. Layne*, 526 U.S. 603, 618 (1999). If determining whether an appointee of the governor fits within the Elrod-Branti doctrine creates a challenging question of constitutional law, then the defendants are entitled to qualified immunity.

**C.      Mr. Love's 42 U.S.C. § 1985 Claim Fails Because He Has Not Pleaded a Conspiracy.**

Count II of Mr. Love's complaint attempts to assert a claim under 42 U.S.C. § 1985, which requires a plaintiff to allege:

> (1) a conspiracy of two or more persons, (2) are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the

19

equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Unus v. Kane*, 565 F.3d 103, 126 (4th Cir. 2009) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)); *see also Kobe v. Buscemi*, 821 Fed. App'x 180, 187 (4th Cir. 2020).

A complaint asserting a 42 U.S.C. § 1985 claim requires an "adequate allegation of class-based animus." *Borkowski*, 492 F. Supp. 3d at 483. Moreover, "[i]n order to prove a section 1985 conspiracy, a claimant must show an agreement or a meeting of the minds by defendants to violate the claimant's constitutional rights." *Facey v. Dae Sung Corp.*, 992 F. Supp. 2d 536, 541 (D. Md. 2014). "This is a 'relatively stringent standard', and the Fourth Circuit 'has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy." *Borkowski*, 492 F. Supp. 3d at 483 (quoting *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995)).

The Fourth Circuit has "specifically rejected section 1985 claims wherever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Simmons*, 47 F.3d at 1377. If a plaintiff alleges "the existence of conspiracies in only the most conclusory way and has not supported his allegations of conspiracy by reference to material facts," then the plaintiff will have failed to state a claim under § 1985. *Sellner v. Panagoulis*, 565 F. Supp. 238, 248 (D. Md. Dec. 29, 1982).

Mr. Love's complaint fails to state a claim under § 1985. Mr. Love's allegations of a conspiracy only exist in the broad conclusory statements. Rather than allege a conspiracy, Mr. Love's complaint alleges that his supervisor, Steven McAdams, terminated him on August 30, 2020 and—without supporting factual allegations—attempts to assign

that action to other defendants.  The failure to allege any facts about any other defendant is fatal to his claim that a conspiracy existed, which requires "a conspiracy of two or more persons." *Unus*, 565 F.3d at 126.  Because Mr. Love has only alleged a conspiracy in conclusory terms, his claim should be dismissed with prejudice.

### D.  Mr. Love's 42 U.S.C. § 1986 Claim Fails Because His 42 U.S.C. § 1985 Claim Fails.

Count III of Mr. Love's complaint purports to assert a claim under 42 U.S.C. § 1985. This claim fails because the "[v]iability of a § 1986 claim is based on the antecedent § 1985 claim.  If the § 1985 claim is dismissed, the § 1986 claim also fails." *Borkowski*, 492 F. Supp. 3d at 483 (citations omitted).  "[S]ection 1986 . . . 'merely gives a remedy for misprision of a violation of 42 U.S.C. § 1985.'" *Sellner*, 565 F. Supp. at 249 (quotation omitted).  Because Mr. Love's § 1985 claim fails as a matter of law, so too does his § 1986 claim.  This Court should dismiss it with prejudice.

### E.  Mr. Love's Article 40 Claim Is Read In Pari Materi With His First Amendment Claim, and Fails For The Same Reasons.

As shown above, defendants are immune from Mr. Love's Article 40 claim in Count IV.  First, the State and the official-capacity claims are barred by the Eleventh Amendment. Because the complaint alleges that each of the defendants was acting within the scope of their duties, ECF 1 at ¶¶ 88, 110, each of the individual-capacity defendants enjoy State personnel immunity unless they are sufficiently alleged to have acted with malice or gross negligence.  Mr. Love makes no attempt to allege gross negligence and, as argued above, failed to plead sufficient facts to allege malice.

21

Moreover, Article 40 is read in pari materia with the First Amendment. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery County*, 684 F.3d 462, 468 n.3 (4th Cir. 2012). For the same reasons that Mr. Love's claim for retaliation under the First Amendment fails, his claim for retaliation under Article 40 also fails.

### F.    Mr. Love's Federal Wrongful Discharge Claim Does Not Exist.

Count V asserts a claim for "wrongful discharge" under federal law. Federal rights of action, like substantive federal law, "must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citation omitted). The Fourth Circuit has held that a private right of action from Congress must "'speak[] with a clear voice' and the statute must 'unambiguously' express the intent 'to create not just a private right but also a private remedy.'" *Clear Sky Car Wash LLC v. City of Chesapeake*, 742 F.3d 438, 444 (4th Cir. 2014) (quotation omitted). Where "Congress is silent or ambiguous, courts may not find a cause of action 'no matter how desirable that might be as a policy matter.'" *Planned Parenthood S. Atlantic v. Baker*, 941 F.3d 687, 695 (4th Cir. 2019) (quotation omitted). "'Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.'" *Alexander*, 532 U.S. at 287 (citation and quotation omitted).

Maryland common law recognizes the tort of wrongful discharge. *Alder v. American Standard Corp.*, 291 Md. 31 (1981), *ans. conformed to*, 538 F. Supp. 572 (D. Md. 1982), *aff'd & rev'd*, 803 F.2d 1303 (4th Cir. 1987). But there is no federal common law tort for wrongful discharge to invoke this Court's jurisdiction as a federal question. 28 U.S.C. § 1331. The Maryland common law tort could, theoretically, be asserted if diversity

of citizenship was the basis for bringing the claim in federal court, *see* 28 U.S.C. § 1332, or this Court could elect to assume supplemental jurisdiction if the state-law claim was asserted in conjunction with other claims giving this Court original jurisdiction, *see* 28 U.S.C. § 1367.  Because there is no such thing as a federal common law tort for wrongful discharge, it should be dismissed with prejudice.

### G. Mr. Love's State Wrongful Discharge Claim Fails For The Same Reasons As His Article 40 Claim.

Mr. Love's claim in Count VI for wrongful discharge under Maryland law also fails. A claim for wrongful discharge is a claim that was judicially created.  *Alder*, 291 Md. 31. To state a cause of action, the plaintiff must meet a stringent pleading standard and articulate a public policy that was violated.  Under Maryland law, the tort of wrongful discharge generally applies to three types of discharges:

1. The discharge of an employee because of the employee's refusal to commit an unlawful or wrongful act;

2. The discharge of an employee because the employee performed an important public function; or

3. The discharge of an employee for exercising a statutory right or privilege.

*Makovi v. Sherwin-Williams Co.*, 316 Md. 603, 610-11 (1989).  "Absent a statute expressing a clear mandate of public policy, there ordinarily is no violation of public policy . . . ."  *Watson v. Peoples Security Life Ins. Co.*, 322 Md. 467, 478 (1991).

The common law tort of wrongful discharge is analyzed the same way that the alleged violation of Article 40 would be addressed.  This claim should be dismissed for the same reasons that the Article 40 claim should be dismissed.

23

V.     MR. LOVE HAS FAILED TO SERVE DEFENDANTS FOR THE TORT-BASED CLAIMS, AND HE HAS NOT SERVED MATTHEW CLARK.

Service on the State and its employees requires certain action for it to be completed correctly.  A case like this one requires attention to detail because it is brought against multiple state officials who are sued in their official and individual capacities, and it asserts a mixture of constitutional and tort-based claims.

Claims that do not arise under the Maryland Tort Claims Act (Counts I, II, and III) are typically served on the Attorney General.  Md. Rule 2-124(j), (k).  Due to the ongoing COVID-19 pandemic, the Attorney General has been accepting service by email.  Press Release, Office of the Attorney General, Alert: Announcement Regarding Service of Civil Complaints     and     Subpoenas     (Mar.     12,     2020),     *available     at* https://www.marylandattorneygeneral.gov/Pages/Service_during_pandemic.pdf.     The Attorney General is only able to accept service for the State and for the claims brought against the individually-named defendants to the extent they are sued in their official capacity.  In order to accept service for the individual capacity claims, the Attorney General can only accept on behalf of the individual "after obtaining the individual's permission." *Id.*

Here, Mr. Love's prior counsel attempted electronic service on the State and its employees by using the email address that was set up for service during the COVID-19 pandemic.  On December 2, 2021, service was accepted on behalf of the State and the individually-named defendants to the extent that they are sued in their official capacities, and only accepted for the claims not covered by the Maryland Tort Claims Act (Counts I,

II, and III).  The State sought permission to accept service for the individual capacity claims.  On December 3, 2021, service was accepted for the claims not covered by the Maryland Tort Claims Act for the individually-named defendants to the extent they are sued in their individual capacities, except for Matthew Clark.  Permission to accept service on Mr. Clark's behalf was not secured.

Tort-based causes of action must be served on the Treasurer.  "In an action under [the Maryland Tort Claims Act], service of the complaint and accompanying documents is sufficient only if made on the Treasurer."  State Gov't § 12-108(a).  Mr. Love's prior counsel attempted service on the Treasurer to satisfy the statutory service requirement for the tort claims asserted in the complaint (Counts IV and VI).  Service was rejected.  Upon information and belief, Mr. Love has not cured service on the Treasurer.

The complaint has not been served on the Treasurer and, therefore, the tort-based claims (Count IV and Count VI) should be dismissed.  The individual-capacity claims against Mr. Clark have not been served and he should be dismissed.

## VI.   IF ANY CAUSE OF ACTION SURVIVES, MR. LOVE'S CLAIM FOR PUNITIVE DAMAGES SHOULD BE DISMISSED.

Mr. Love's complaint seeks punitive damages, which are only permitted "for conduct that involves 'reckless or callous indifference to the federally protected rights of others,' as well as for conduct motivated by evil intent."  *Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987).  For substantially similar reasons to those entitling defendants to qualified immunity and State personnel immunity, the complaint fails to state a claim for punitive damages because it fails to allege facts that any defendant acted with callous

25

indifference, or was motivated by evil intent.  The absence of facts supporting such a damages claim require dismissal.

## CONCLUSION

For all the foregoing reasons, defendants' motion to dismiss should be granted and the complaint should be dismissed with prejudice.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

/s/ Robert A. Scott
ROBERT A. SCOTT
Fed. Bar No. 24613
JAMES N. LEWIS
Fed. Bar No. 30220
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-7055
(410) 576-6955 (facsimile)
rscott@oag.state.md.us
jlewis@oag.state.md.us

Attorneys for Defendants