# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ARTHUR M. LOVE,

    *Plaintiff*,

    v.

LARRY HOGAN, *et al.*,

    *Defendants.*

*   Case No. 1-21-cv-02029-JRR*

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## MEMORANDUM OPINION

This matter comes before the court on Defendants Larry Hogan, Boyd Rutherford, Steven McAdams, Allison Mayer, Mona Vaidya, Shareese Churchill, Matthew A. Clark, and the State of Maryland's Motion to Dismiss.  (ECF No. 7; the "Motion.")

The parties' submissions have been reviewed and no hearing is necessary.  Local Rule 105.6 (D. Md. 2021).  For the reasons that follow, by accompanying order, the Motion will be granted as to all counts.

## BACKGROUND[1]

Plaintiff Arthur M. Love is a former appointee under the Hogan Administration.[2]  (ECF No. 1, ¶16; "Complaint.")  Each individual Defendant was at all times relevant to the complaint a government official for the State of Maryland.  *Id.* at ¶¶2-8.  Defendant State of Maryland is a corporate and political body with all the rights and powers of government.  *Id.* at ¶9.  This case

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Complaint.  (ECF No. 1.)

[2] The Hogan Administration is the gubernatorial administration of Maryland Governor Lawrence J. Hogan, Jr.

arises from Plaintiff's termination from his job after he posted memes in a Facebook group. (ECF No. 7, p. 2.)

On or about January 21, 2015, Plaintiff was appointed by Defendant Governor Hogan to serve as Deputy Director of Community Initiatives.  In this role, Plaintiff was the lead staff member on all special events and initiatives for the Governor's Office of Community Initiatives ("GOCI").  (ECF No. 7-4, p. 2.)[3]  On or about August 28, 2020, Mr. Love, using his private account, was on a Facebook page called "Inside Maryland Politics" discussing the "civil unrest occurring in Kenosha [,Wisconsin] following the police shooting of Jacob Blake on August 23, 2020."  (ECF No. 1, ¶20.)   The Complaint further alleges that Plaintiff "used his private Facebook account to discuss Mr. Rittenhouse's case and support Mr. Rittenhouse's self-defense right, communicating his personal belief that Mr. Rittenhouse's actions may have been justified under the doctrine of self-defense."  *Id.* ¶25.  Plaintiff expressed his beliefs by posting several memes showing support for Kyle Rittenhouse and condemning the actions of the protestors. (ECF No. 7-2.)[4]  Other members of the Facebook group became discontented with Plaintiff's position, which prompted Plaintiff to leave the discussion.  (ECF No. 1, ¶28.)

On August 29, 2020, Plaintiff awoke to press at his home due to the attention his Facebook posts had received, which prompted him to call his supervisor, Defendant Steven McAdams, Executive Director of the Governor's Office.  (ECF No. 1, ¶27; ECF No. 7, p. 3.)  On the call, Mr. McAdams informed Plaintiff that he need not worry and that they would "get through this."  (ECF No. 1, ¶28.)  That same day, however, Mr. McAdams issued a public statement on behalf of the Hogan Administration that "[t]hese divisive images and statements are

---

[3] With Respect to Exhibit C—Position Description, at ECF No. 7-4, *see* discussion at Section Consideration of Exhibits, *infra*.
[4] With Respect to Exhibit A—Memes Posted on Facebook, at ECF No. 7-2, *see* discussion at Section Consideration of Exhibits, *infra*.

inconsistent with the mission and core values of the Office of Community Initiatives.  Earlier today, I relieved this employee of his duties." *Id.* ¶33.  On August 30, 2020, at approximately 8:38 a.m., Plaintiff received a phone call from Mr. McAdams informing him that he had been terminated due to his Facebook posts. *Id.* ¶31.  On August 31, 2022, Plaintiff received his official termination letter from Mr. McAdams on behalf of the Hogan Administration.  (ECF No. 1. ¶32; ECF No. 7-3.)[5]

On August 11, 2021, Plaintiff filed the Complaint.  The Complaint sets forth six counts: (I) Retaliation Based on Exercise of Right to Free Speech in Violation of 42 U.S.C. § 1983; (II) Retaliation Based on Exercise of Right to Free Speech in Violation of 42 U.S.C. § 1985; (III) Retaliation Based on Exercise of Right to Free Speech in Violation of 42 U.S.C. § 1986; (IV) Retaliation Based on Exercise of Article 40 Right to Freedom of Speech in Violation of the Maryland Tort Claims Act; (V) Wrongful Discharge under Federal Law; and (VI) Wrongful Discharge Under State Law.  (ECF No. 1.)  The prayer for relief seeks (i) an award of compensatory, special, and punitive damages in appropriate amounts to be established at trial; (ii) an award of costs associated with the action; and (iii) any and all other or further relief that this court deems just and proper. *Id.* at p. 21.

Defendants move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) arguing that Defendants' of sovereign immunity deprives the court of subject-matter jurisdiction over this action; and that even if this court does have subject-matter jurisdiction over Plaintiff's claims, Plaintiff fails to state a claim upon which relief can be granted.  (ECF No. 7-2, p. 5.)

---

[5]With respect to Exhibit B – Termination Letter, at ECF No. 7-4, *see* discussion at Section Consideration of Exhibits, *infra.*

## LEGAL STANDARDS

### *Federal Rule of Civil Procedure 12(b)(1)*

Defendants assert the court lacks subject matter jurisdiction over this action because all of Plaintiff's claims are barred by Eleventh Amendment sovereign immunity.  Plaintiff bears the burden of establishing subject-matter jurisdiction.  *Demetres v. East West Constr., Inc.,* 776 F.3d 271, 272 (4th Cir. 2015).   In the Fourth Circuit, the defense of sovereign immunity is a jurisdictional bar because "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. General Dynamics Info. Tech*., 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)).  Because sovereign immunity is akin to an affirmative defense, a defendant bears the burden of demonstrating that sovereign immunity exists.  *Hutto v. S.C. Ret. Sys*., 773 F.3d 536, 543 (4th Cir. 2014).

### *Federal Rule of Civil Procedure 12(b)(6)*

Defendants also argue that the Complaint fails to state a claim upon which relief can be granted.  (ECF No. 7-2, p. 9.)   A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint." It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999)).   Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (citing *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)).   The court, however, is "not required to accept as true the

4

legal conclusions set forth in a plaintiff's complaint." *Edwards,* 178 F.3d at 244 (citing *District 26, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1085 (4th Cir. 1979)).

## CONSIDERATION OF EXHIBITS

As an initial matter, Defendants attach three exhibits to their Motion: Exhibit A – Memes posted on Facebook (ECF No. 7-2); Exhibit B – Termination Letter (ECF No. 7-3); and Exhibit C – Position Description (ECF No. 7-4).  Defendants argue that the three exhibits are integral to Plaintiff's claims and, therefore, may be considered without converting the Motion from a motion to dismiss to one for summary judgment.  (ECF No. 7-2, n. 2, n. 3, n. 5.)

 "An important distinction must be drawn between the evidence a court may consider in reviewing a Rule 12(b)(1) motion to dismiss, as opposed to a Rule 12(b)(6) motion to dismiss." *Chesapeake Bay Found Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011).  In evaluating a motion to dismiss raised under Rule 12(b)(1), "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).  "The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citing *Trentacosta v. Frontier Pacific Aircraft Indus.,* 813 F.2d 1553, 1559 (9th Cir. 1987)) (citations omitted).  "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citing *Trentacosta,* 813 F.2d at 1558).

In contrast, in ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court usually does not consider evidence outside of the complaint. A court may consider documents attached to a motion to dismiss if the document is "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake,* 794 F. Supp. 2d. at 611 (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). "In addition to integral and authentic exhibits, on a 12(b)(6) motion the court 'may properly take judicial notice of matters of public record.'" *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

In the instant case, Defendants move to dismiss all six counts of the Complaint pursuant to Rule 12(b)(1). As set forth above, when evaluating a Motion under 12(b)(1), the court may consider all the attached exhibits without converting the Motion to a motion for summary judgment. In the alternative, Defendants move to dismiss all six counts of the Complaint pursuant to Rule 12(b)(6). The court finds that Exhibits A through C are integral to the Complaint; and Plaintiff does not challenge their authenticity. The Facebook posts (Ex. A; ECF No. 7-2) are materially referenced several times in the Complaint, and Plaintiff alleges that they formed the basis for his termination. (ECF No. 1, ¶34.) The Termination Letter (Ex. B; ECF No. 7-3) is material to and relied upon in the Complaint as effecting Plaintiff's termination. The Position Description (Ex. C; ECF No. 7-4) memorializes Plaintiff's job duties and gives rise to his employment. Further, Plaintiff alleges he was acting in his personal capacity when he posted the memes; therefore, his job description is material to the court's determination of the

government's right to limit Plaintiff's speech.  The court finds that all three exhibits attached to the Motion are integral and authentic in accordance with *Am. Chiropractic Ass'n* and *Chesapeake, supra*.  Should the court find that subject matter jurisdiction exists for any of the counts, it will consider the exhibits on resolution of the Motion pursuant to Rule 12(b)(6).

**ANALYSIS**

## I.  <u>SUBJECT MATTER JURISDICTION</u>

### A.      **42 U.S.C. §§ 1983, 1985, 1986**

Plaintiff alleges that by terminating his employment because of his Rittenhouse related Facebook posts, Defendants violated 42 U.S.C. §§ 1983, 1985, and 1986.  In response to Plaintiff's claims, Defendants invoke sovereign immunity under the Eleventh Amendment.  The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any Foreign State."  Under the Eleventh Amendment*,* States generally enjoy immunity from suit unless a state waives its immunity, or the immunity is abrogated by Congress.  *See Bd. of Tres.  v. Garrett,* 531 U.S. 356, 363-64 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court.  We have recognized, however, that Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority.") (Internal citations omitted).  "[F]or purposes of the Eleventh Amendment, a state official acting in his official capacity is protected from a damages action by the same immunity." *Ballenger v. Owens,* 352 F.3d 842, 844-45 (4th Cir.2003) (citations omitted).

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

42 U.S.C.  § 1983.

The United States Supreme Court has construed the word "person" in § 1983 to exclude States because there is no evidence that Congress, in enacting the statute, intended to remove the immunity protections of the Eleventh Amendment from States.  *Howlett v. Rose,* 496 U.S. 356, 377 (1990); *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66 (1989).   Therefore, a federal court may not entertain a §1983 action against such a state defendant.  *Howelett,* 496 U.S. at 277.  While state officials are quite literally "persons," "a suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police,* 491 U.S. 58 (1989) (citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985)).   Accordingly, state officials acting in their official capacities are not "persons" under § 1983.

Section 1985(3) provides in relevant part:[6]

> If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more

---

[6] Based on its reading of 42 U.S.C. § 1985 and Plaintiff's allegation that "Defendant conspired to deprive Mr. Love of his rights protected by the First and Fourteenth Amendments to the United States Constitution (ECF No. 1, ¶90.) the court construes Count II as a claim for violation of § 1985(3).

> persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

> Section 1986 provides in relevant part:

> > Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [42 USCS § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action…

42 U.S.C. § 1986.

Similar to suits brought under § 1983, the State of Maryland and the individual Defendants acting in their official capacities are immune from suit under §§ 1985 and 1986. *See Borkowski v. Baltimore County,* 492 F. Supp. 3d 454 (D. Md. 2020) (holding that the State and state officials sued in their official capacities are immune from claims under 42 U.S.C. §§ 1983, 1985, and 1986.)

Counts I and II of the Complaint (for violations of §§ 1983 and 1985, respectively) allege that "Defendants, acting under the color of state law, terminated Mr. Love's employment with

the State based on Mr. Love's Facebook posts in support of Mr. Rittenhouse's right to self-defense," and that "Defendants were acting within the scope of their employment or agency with the State of Maryland when Defendants intentionally terminated Mr. Love in response to his private social medial posts supporting Mr. Rittenhouse's right to self-defense." (ECF No. 1, ¶¶ 72-73, 87-88.)  The Complaint expressly alleges that Defendants acted within their official capacities, and fails to allege that Defendants acted in any respect outside the scope of their official capacities.  The individual Defendants acting in their capacities as state officials enjoy the sovereign immunity afforded the State of Maryland.  *Ballenger,* 352 F.3d at 844-45.

Neither the Complaint nor Plaintiff's opposition to the Motion asserts that Defendants waived their immunity or that it has been abrogated by Congress.  Instead, Plaintiff argues in his opposition that, by virtue of their entry of appearance, Defendants have submitted to the jurisdiction of the court.  (ECF No. 30, p. 9.)  Plaintiff conflates personal jurisdiction with subject matter jurisdiction; Defendants raise no personal jurisdiction defense.  Because Defendants do not challenge personal jurisdiction, the court will not address Plaintiff's personal jurisdiction argument.  For the reasons stated above, the court concludes that sovereign immunity bars Plaintiff's Counts I, II, and III, and, therefore, that the court lacks subject matter jurisdiction over these claims.[7]

### B.      Maryland State Claims (Counts IV and VI)

"The Maryland Tort Claims Act,[8] …provides statutory immunity 'to insulate State employees generally from tort liability if their actions are within the scope of employment and without malice or gross negligence.'" *Higginbotham v. PSC,* 412 Md. 112, 130 (2009) (quoting

---

[7] Defendants assert that Count V (wrongful discharge under federal law) is barred by the Eleventh Amendment and should be dismissed.  (ECF No. 7-1, p. 7.)  Because the court finds that Plaintiff's cause of action for wrongful discharge under federal law (Count V) fails to state a cognizable claim, *see* discussion at Section II. E., *infra,* the court will not address Defendants' Eleventh Amendment Argument with respect to Count V.
[8] MD. CODE ANN., STATE GOV'T. §§ 12-101 *et seq.*

*Lee v. Cline* 384 Md. 245, 261, (2004)).  "The immunity under the Maryland Tort Claims Act, if otherwise applicable, encompasses constitutional torts and intentional torts."  *Lee,* 384 Md. at 266.

The waiver of sovereign immunity in the Maryland Torts Claims Act limits the state's waiver of immunity to actions brought in the Maryland state courts.  *Smith v. Bernier*, 701 F. Supp. 1171 (D. Md. 1988); MD. ST. GOV'T.  CODE ANN. § 12-104 (1984).  A state's waiver of immunity from suit in state court "is not enough to waive the immunity guaranteed by the Eleventh Amendment."  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985) (citations omitted).  Therefore, for the reasons articulated in Section A, *supra*, the court will dismiss the state law claims under Counts IV and VI on grounds that the immunity afforded Defendants for purposes of Counts I, II, and III, likewise shields Defendants from liability as to Counts IV and VI.

## II.   MOTION FOR FAILURE TO STATE A CLAIM[9]

### A.   Actionable Conduct Not Alleged

Defendants argue that the Complaint alleges no actionable conduct by six of the seven named defendants.  (ECF No. 7-1, p. 9.)  Specifically, Defendants assert Governor Hogan and Mr. McAdams are the only two individuals about whom Plaintiff makes any substantive allegations in the Complaint.  *Id.* at p. 10.  Defendants argue that the Complaint briefly mentions Governor Hogan only with respect to Plaintiff's appointment as Deputy Director of Community Initiatives and that Plaintiff fails to allege any facts pertaining to Governor Hogan that bear upon the elements in any claim.  *Id.*   Plaintiff's opposition fails to address this argument.  Therefore, the court finds that Plaintiff has abandoned all claims against Defendants Larry Hogan, Boyd

---

[9] The Motion is completely resolved on Rule 12(b)(1) grounds.  For purposes of completeness, however, the court will address the arguments made on Rule 12(b)(6) grounds.

Rutherford, Allison Mayer, Mona Vaidya, Shareese Churchill, and Matthew A. Clark. *Ferdinand-Davenport v. Children's Guild,* 742 F. Supp. 2d 772, 777 (D. Md. 2010) (dismissing claims that were not addressed in plaintiff's opposition to motion to dismiss as abandoned.) Nonetheless, for the purpose of completeness, the court will address the arguments raised by Defendants.

"Although § 1983 must be 'read against the background of tort liability that makes a man responsible for the natural consequences of his actions…'" "liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights. The doctrine of *respondeat superior* has no application under this section." *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977) (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961) and *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971), aff'd 451 F2d 1011 (4th Cir. 1971)).

In *Vinnedge,* the plaintiff sued four detectives and the Superintendent of Jails for the Commonwealth of Virginia under § 1983 alleging that he was denied medical treatment following his arrest while incarcerated in the Fairfax County jail. 550 F.2d at 927. The Fourth Circuit affirmed the district court's dismissal as to the Superintendent,[10] because the plaintiff's claims "failed to allege any personal connection between [the Superintendent] and any denial of Vinnedge's constitutional rights, the action against him must fail." *Id.* at 929. The court noted that the complaint did not allege that the Superintendent had any involvement in the alleged denial of his medical care. *Id.* at 928.

---

[10] As to the remaining defendants, the Fourth Circuit stated: "Because we are unable to say with assurance from the record that a claim upon which relief could be granted was not stated against the detectives, however, we must vacate the district court's order of dismissal as to them, and remand for further proceedings." *Vinnedge,* 550 F.2d at 927.

In the present case, the Complaint is devoid of allegations that any Defendant other than Mr. McAdams had personal involvement in the alleged violation of Plaintiff's First Amendment rights.  Plaintiff fails to allege any facts pertaining to action or inaction by Governor Hogan that relates to the alleged deprivation of Plaintiff's rights under any count of the Complaint.  Indeed, the Complaint merely describes by way of background that Plaintiff was appointed by Governor Hogan,[11] and lacks any allegations that would notify any Defendant other than Mr. McAdams what he or she is alleged to have done.  Accordingly, the Complaint fails to state a claim against Defendants Governor Larry Hogan, Boyd Rutherford, Allison Mayer, Mona Vaidya, Shareese Churchill, or Matthew A. Clark.

### B.      Count I – Retaliation Based on Exercise of Right to Free Speech in Violation of 42 U.S.C. § 1983

"To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) []he engaged in protected First Amendment activity, (2) the defendant[] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the [defendant's] conduct."  *Martin v. Duffy,* 977 F.3d 294, 299 (4th Cir. 2020) (citations omitted).

Defendants argue that Plaintiff's § 1983 claim fails as a matter of law because Plaintiff does not satisfy the *Connick-Pickering* test.  (ECF No. 7-1, pp. 11-12.)

> "The Supreme Court in *Connick v. Myers*, 461 U.S. 138 (1983), and *Pickering v. Board of Education*, 391 U.S. 563 (1968), has explained how the rights of public employees to speak as private

---

[11] With respect to Governor Hogan, the Complaint alleges merely :

Mr. Love led Governor Hogan's statewide field operations during Hogan's first gubernatorial campaign.

On January 21, 2015, Governor Hogan appointed Mr. Love Deputy Director of Community Initiatives.

(ECF No. 1, ¶15 and 16.)

13

citizens must be balanced against the interest of the government in ensuring its efficient operation. In light of these competing interests, we have held that in order for a public employee to prove that an adverse employment action violated his First Amendment rights to freedom of speech, he must establish (1) that he "was speaking as a citizen upon a matter of public concern" rather than "as an employee about a matter of personal interest"; (2) that "the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public"; and (3) that "the employee's speech was a substantial factor in the employee's termination decision." *McVey v. Stacy*, 157 F.3d 271, 277-78 (4th Cir. 1998). In conducting the balancing test in the second prong, we must consider the context in which the speech was made, including the employee's role and the extent to which the speech impairs the efficiency of the workplace. (Citations omitted).

Factors relevant to this inquiry include whether a public employee's speech (1) impaired the maintenance of discipline by supervisors; (2) impaired harmony among coworkers; (3) damaged close personal relationships; (4) impeded the performance of the public employee's duties; (5) interfered with the operation of the [agency]; (6) undermined the mission of the [agency]; (7) was communicated to the public or to coworkers in private; (8) conflicted with the responsibilities of the employee within the [agency]; and (9) abused the authority and public accountability that the employee's role entailed. *Ridpath v. Board of Governors Marshall Univ*., 447 F.3d 292, 317 (4th Cir. 2006).

Accordingly, "a public employee who has a confidential, policymaking, or public contact role and speaks out in a manner that interferes with or undermines the operation of the agency, its mission, or its public confidence, enjoys substantially less First Amendment protection than does a lower level employee." *McVey*, 157 F.3d at 278.

*Bland v. Roberts,* 730 F.3d 368, 373-74 (4th Cir. 2013).

Defendants argue further that, even if Plaintiff does not satisfy the *Connick-Pickering* test, his position falls within the *Elrod-Branti* exception. (ECF No. 7-1, p. 15.) Claims involving the discharge of public employees because of their political beliefs and affiliation are analyzed under the principles established by *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v.*

*Finkel*, 445 U.S. 507 (1980).  *Bland,* 730 F.3d at 374.  Under *Elrod* and *Branti,* "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation [or political allegiance] is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 518.  The Fourth Circuit has adopted a two-part test for conducting the *Elrod-Branti* analysis.  *Bland,* 730 F.3d at 375.

First, a court must consider whether "the [plaintiff's] position involve[s] government decision making on issues where there is room for political disagreement on goals or their implementation." *Stott v. Haworth*, 916 F.2d 134, 141 (4th Cir. 1990) (internal quotation marks omitted).  If the position involves government decision making, the court must then "examine the particular responsibilities of the position to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation [or political allegiance] is an equally appropriate requirement." *Id*. at 142 (internal quotation marks omitted).

"The first step of the inquiry requires us to examine the issues dealt with by the employee 'at a very high level of generality,' while '[t]he second step requires a much more concrete analysis of the specific position at issue.'" *Bland,* 730 F.3d at 375 (quoting *Fields v. Prater*, 566 F.3d 381, 386 (4th Cir. 2009)).  "At the second step, 'courts focus on the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office.'" *Id.* (quoting *Stott*, 916 F.2d at 142.)  "In this regard, we focus on the job description for the position in question and 'only look past the job description where the plaintiff demonstrates some systematic unreliability, such as where the description has been manipulated in some manner by

officials looking to expand their political power.'" *Id.* (quoting *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008)) (internal quotation marks omitted).

Defendants argue that Plaintiff cannot satisfy the second prong of the *Connick-Pickering* test, which requires a plaintiff to demonstrate that "the employee's interest in speaking upon the matter of public concern outweighed the government's interest in managing the working environment." *Durham v. Jones,* 737 F.3d 291, 299 (4th Cir. 2013).  (ECF No. 7-1, p. 12.)  In the alternative, Defendants argue that even if Plaintiff satisfies the *Connick-Pickering* test, his job description demonstrates that his job "relates to partisan political interests… or concerns," and therefore, his position falls within the *Elrod-Branti* exception.  *Id.* at p. 16.  Lastly, Defendants assert that if both the *Connick-Pickering* test and the *Elrod-Branti* exception arguments fail, Defendants are protected by qualified immunity.  *Id*. at p. 17.

Plaintiff argues in opposition that the Facebook memes he posted fit perfectly within the *Connick-Pickering* test and that his termination was solely due to his expression through the Facebook memes rather than any workplace wrongdoings.  (ECF No. 30, pp. 10-11.)   Plaintiff argues that his termination plainly violates every test enshrined in First Amendment case law. *Id.*  Additionally, Plaintiff asserts that he was acting as a citizen and not a government employee when he posted the Facebook memes.  *Id*. at pp. 11-12.  Lastly, Plaintiff argues that these issues are not suited for dismissal at the 12(b)(6) stage, but rather are questions of fact that must be tried to a jury.  *Id.* at 12.

In assessing Defendants' argument that Plaintiff has failed to state a § 1983 claim, under Rule 12(b)(6), the court is required to evaluate the legal sufficiency of the Complaint to ascertain whether Plaintiff has pled a claim upon which relief can be granted.  Defendants do not argue that Plaintiff did not sufficiently plead a § 1983 claim, but instead focus their argument on the

*Connick-Pickering* and *Elrod-Branti* exceptions to the protection of "the right to be free from retaliation by a public official for the exercise of [their First Amendment] right[s]." Defendants never address the sufficiency of the allegations to state a claim under § 1983; rather they fashion their motion to dismiss as one for summary judgment.

The question of whether or not alleged speech implicates a matter of public concern, and if the speech is a matter of public concern, whether the employee's interest in the speech was outweighed by the employer's interest in the effective and efficient fulfillment of its responsibilities to the public, is solely one for the court. *Joyner v. Lancaster,* 815 F.2d 20, 23 (4th Cir. 1987). Even considering the exhibits attached to the Motion, the court declines to consider whether Plaintiff meets the *Connick-Pickering* test at this stage, as substantially more evidence is required to undertake such an analysis, rendering it inappropriate for resolution at the 12(b)(6) stage.[12] Nonetheless, Count I will be dismissed under Rule 12(b)(1) for the reasons articulated in Section I. A.

### C.   Counts II and III – Retaliation Based on Exercise of Right to Free Speech in Violation of 42 U.S.C. §§ 1985 and 1986

Counts II and III of the Complaint are for alleged violations of 42 U.S.C. §§ 1985 and 1986. Defendants argue that the claims fail because Plaintiff has not alleged a conspiracy under § 1985, which proves fatal to his § 1986 claim. (ECF No. 7-1. pp. 21-22.) Plaintiff fails to respond to these arguments and is therefore deemed to have abandoned these claims. *Ferdinand-Davenport v. Children's Guild,* 742 F. Supp. 2d 772, 777 (D. Md. 2010) (dismissing the claims that were not addressed in the plaintiff's opposition as abandoned.) Notwithstanding, Plaintiff's abandonment, the court addresses these arguments for the purpose of completeness.

---

[12] The court is aware that some district courts appear to have resolved a *Connick-Pickering/Elrod-Branti* challenge on a 12(b)(6) motion and recognizes there may be cases and circumstances in which that is appropriate. In this particular case, it is not.

To state a claim in violation of § 1985 a plaintiff must allege:

> 1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Simmons v. Poe,* 47 F.3d 1370, 1377 (4th Cir.1995) (citing *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985)).  It is well settled that in order to prove a § 1985 conspiracy, a plaintiff must "show an agreement or a 'meeting of the minds' by defendants to violate the [plaintiff]'s constitutional rights."  *Id.* (citing *Caldeira v. County of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989)).  The Fourth Circuit "has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a § 1985 conspiracy."  *Id.*  Moreover, where the existence of a conspiracy is alleged in a conclusory manner, the Fourth Circuit has found the claim fails pursuant to Rule 12(b)(6). *Id.  See also Sellner v. Panagoulis*, 565 F. Supp. 238, 248 (D. Md. 1982) (finding that the plaintiff's "[§] 1985 claims fail because he has alleged the existence of conspiracies in only the most conclusory way and has not supported his allegations of conspiracy by reference to material facts.")

"Viability of a § 1986 claim is based on the antecedent § 1985 claim."  *Borkowski v. Balt. Cty.*, 492 F. Supp. 3d 454, 485 (D. Md. 2020) (citations omitted) "If the § 1985 claim is dismissed, the § 1986 claim also fails."  *Id.* (citing *Buschi*, 775 F.2d at 1243); *see also Sellner*, 565 F.Supp. at 249) ("[§] 1986. . . merely gives a remedy for misprision of a violation of 42 U.S.C. § 1985.") (citations and internal quotations omitted).

In the present case, Plaintiff alleges:

> Defendants conspired to deprive Mr. Love of his rights protected by the First and Fourteenth Amendments to the United States Constitution.

> In furtherance of the aforesaid conspiracy, one or more of the Defendants committed an overt act, to wit, upon information and belief, one or more of the Defendants decided to, and did, fired Mr. Love because his speech was "inconsistent with the mission and core values of the Office of Community Initiatives."
>
> Further, Defendant McAdams' public statement that Mr. Love was relieved of his duties because his speech was "inconsistent with the mission and core values of the Office of Community Initiatives" constitutes an additional overt act of the unlawful conspiracy.
>
> Defendants achieved the objective of their conspiracy. By terminating Mr. Love, the Defendants effectively punished Mr. Love for participating, in his capacity as a private citizen, in this public debate of great public concern….
>
> Defendants had knowledge that the wrongs conspired to be done in violation of Mr. Love's First and Fourteenth Amendment rights were about to be committed….

(ECF No. 1, ¶¶101-03, 105-06.)

Plaintiff fails to allege any facts pertaining to a meeting of the minds between two or more Defendants. *Sellner*, 565 F. Supp. at 248. Indeed, the only Defendant named is Mr. McAdams and Plaintiff offers no specific facts about how any of the other named Defendants are involved in the alleged conspiracy. Further, Plaintiff does not allege any "specific class-based, invidiously discriminatory animus" that motivated the Defendants to "deprive the plaintiff of the equal enjoyment of rights secured by the law to all." *Simmons,* 47 F.3d at 1377. Plaintiff's bald conclusory allegations of conspiracy fail to state a claim under § 1985. Therefore, the § 1986 claim in Count III also fails to state a claim and will be dismissed.

### D.    <u>Counts IV and VI – State Law Claims</u>

Counts IV and VI are Plaintiff's state law claims. Count IV is for "Retaliation Based on Exercise of Article 40 Right to Freedom of Speech in Violation of the Maryland Tort Claims Act" ("MTCA") and Count VI is for wrongful discharge under state law. Both claims are subject to the provisions of the MTCA because they sound in tort law. *See Kee v. State Highway*

*Admin,* 313 Md. 445, 448 (1988) (noting that "[e]ffective July 1, 1982, the General Assembly enacted the Maryland Tort Claims Act, waiving the tort immunity of the State under specified conditions.")

Defendants argue that because the Complaint alleges that Defendants acted within the scope of their duties, each individual Defendant enjoys State personnel immunity unless they are sufficiently alleged to have acted with malice or gross negligence.  (ECF No. 1, ¶¶88, 110; ECF No. 7-1, p. 21.)   Defendants further argue that Plaintiff does not attempt to allege gross negligence and fails to plead sufficient facts to allege malice.  *Id.*

> The Complaint alleges under Counts I and II:
>
>> Defendants acted intentionally and with malice towards Mr. Love to deny his freedoms protected by the First Amendment when they terminated his employment.
>
> Count IV of the Complaint alleges:
>
>> Defendants' actions in terminating Mr. Love were substantially motivated by their disapproval of Mr. Love's viewpoints which supported Mr. Rittenhouse's right to self-defense.
>
>> The State of Maryland is liable for the acts of Defendants on the theory of respondent superior.

(ECF No. 1, ¶¶97, 111, 113.)

"Under the immunity and non-liability provisions of the MTCA, 'state personnel' are immune from suit and from liability in tort for acts or omissions committed within the scope of their public duties and without malice or gross negligence, and when the State waives its immunity pursuant to the MTCA."  *Barbre v. Pope*, 402 Md. 157, 173 (2007) (quoting MD. CODE ANN., STATE GOV'T. § 12-105).

MD. CODE ANN., STATE GOV'T. § 12-105 provides in relevant part:

> State personnel shall have the immunity from liability described under § 5-522(b) of the Courts and Judicial Proceedings Article.

MD. CODE ANN., CTS. & JUD. PROC. § 5-522(b) provides:

> State personnel, as defined in § 12-101 of the State Government
> Article, are immune from suit in courts of the State and from
> liability in tort for a tortious act or omission that is within the
> scope of the public duties of the State personnel and is made
> without malice or gross negligence, and for which the State or its
> units have waived immunity under Title 12, Subtitle 1 of the State
> Government Article, even if the damages exceed the limits of that
> waiver.

MD. CODE ANN., CTS. & JUD. PROC. § 5-522(a) provides in relevant part:

> (a) Immunity of the State is not waived under § 12-104 of the State
> Government Article for:
> * * *
> (4) Any tortious act or omission of State personnel that:
> (i) Is not within the scope of the public duties of the State
> personnel; or
> (ii) Is made with malice or gross negligence . . .

In cases involving allegations of malice, the Maryland Court of Appeals has said that "well-pled facts showing ill-will or evil or wrongful motive are sufficient to take a claim outside of the immunity and non-liability provisions of the MTCA." *Barbre,* 402 Md. at 182 (internal quotation marks omitted).  "For MTCA purposes, malice is conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Nero v. Mosby,* 890 F.3d 106, 127 (4th Cir. 2018) (quoting *Barbre*, 402 Md. at 182.) (internal quotation marks).  "To demonstrate malice, a plaintiff must allege that the government official intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Id.* (quoting *Bord v. Baltimore County*, 220 Md. App. 529, 557 (2014)) (internal quotation marks and citations omitted).

Plaintiff fails to allege facts to state, or support a construction that, any Defendant was motivated by "hate" or tried to "deliberately and willfully injure" Plaintiff.  Plaintiff's allegations

that his termination was motivated by the alleged "disapproval" of his Facebook posts, do not rise to the level of an "evil or wrongful" motive. Similarly, Mr. McAdams' statement to the media that "[t]hese divisive images and statements are inconsistent with the mission and core values of the Office of Community Initiatives. Earlier today, I relieved this employee of his duties" does not allege any "evil or rancorous motive influenced by hate." In fact, the statement on its face only serves to articulate the reason behind Plaintiff's termination: Plaintiff made statements that were divisive – and those divisive statements are contrary to the mission and values of the Office. Plaintiff has not pled any additional facts that indicate Mr. McAdams, or any other Defendant, was motivated by hate in terminating his employment. Further, Plaintiff's allegations do not suggest that as Plaintiff's supervisor, Mr. McAdams was acting outside the scope of his public duties, which include hiring and terminating subordinate employees. The immunity afforded to the State and state personnel has not been waived for the purposes of Plaintiff's state law claims. They will therefore be dismissed.

### E.      Count V– Wrongful Discharge under Federal Law

Defendants argue that Plaintiff's claim for "wrongful discharge" under federal law (Count V) does not state a claim recognized in law and therefore fails under 12(b)(6). (ECF No. 7-1, p. 22.)

"Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (quoting *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 365 (1991) (SCALIA, J., concurring in part and concurring in judgment)). "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Id.*; *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578, (1979) (remedies available are those "that Congress enacted into law.") "The judicial task is to interpret the statute Congress has

22

passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* (citations omitted). "Statutory intent on this latter point is determinative. Without it, a cause of action does not exist, and courts may not create one, no matter how desirable that might be as a policy matter." *Id.*

Even if broadly construed as a claim for retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000 *et seq.*, Count V still would not survive a motion to dismiss under Rule 12(b)(6). "Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005) (*quoting Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002)). Exhaustion is a prerequisite to suit under Title VII and serves to put the employer on notice of the alleged violations. *Id.* A plaintiff's causes of action in the judicial complaint must be "reasonably related to [the] EEOC charge and can be expected to follow from a reasonable administrative investigation." *Id. (*quoting *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247-48 (4th Cir. 2000). Plaintiff fails to allege he exhausted the administrative prerequisites to state a Title VII claim. Accordingly, Count V fails to state a claim for "federal wrongful discharge" (or under Title VII) and will be dismissed.

### F. Service

Defendants assert that Mr. Clark was not served in his individual capacity under Counts I, II, and III. (ECF No. 7-1, p. 24.) "Service is made on an officer or agency of the State of Maryland by serving…the Attorney General …" MD. RULE 2-124(k). A Committee Note to Maryland Rule 2-124(k) states in relevant part: "this section [does not] obviate the need for personal service in accordance with section (b) of this Rule on an officer sued in the officer's individual capacity."

Defendants argue that claims against the State not arising under the MTCA (Counts I, II, III) are typically served on the Attorney General. MD. RULE 2-124(j), (k). Defendants further assert that only the Attorney General is authorized to accept service on behalf of the State and the individually named Defendants to the extent they are sued in their official capacities. (ECF No. 7-1, pp. 24-25.) Moreover, the Attorney General must obtain the individual's authority to accept service for the individual capacity claims. *Id.* Defendants assert that service was accepted on behalf of the State and all individually named Defendants in their official capacities; however, service was accepted for all of the individually named Defendants in their individual capacities except for Mr. Clark, as the Attorney General was unable to secure permission to accept service on Mr. Clark's behalf. *Id.*

Plaintiff counters that he did not have access to Defendants' private or remote addresses for service of process, and, therefore, was unable to serve Mr. Clark personally. (ECF No. 30, p. 5.) Plaintiff was required to serve Mr. Clark to the extent he is being sued in his personal capacity. Plaintiff concedes that he did not serve Mr. Clarke personally, and Defendants assert that the Attorney General was unable to secure Mr. Clark's permission to accept service on his behalf in his individual capacity. Because service was not effected upon Mr. Clark, the claims against Mr. Clark in his individual capacity will be dismissed.

### G.      Notice under the MTCA

A claimant may not sue the State under the MTCA unless: "(1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 180 days after the injury to person or property that is the basis of the claim;" "(2) the Treasurer or designee denies the claim finally;" and "(3) the action is filed within 1 year after the claim is denied finally or 3 years after the cause of action arises, whichever is later." *Condon v. State,* 332 Md. 481, 486 (1993)

(quoting MD. CODE ANN., STATE GOV'T § 12-106(b)).  Section 12-106 notice to the Treasurer is mandatory for action brought under the MTCA.  *Collier v. Nesbitt*, 79 Md. App. 729, 733 (1989).

Defendants argue that the state law tort-based claims under Counts IV and VI should be dismissed because the Complaint has not been served on the Treasurer.  (ECF No. 7-1, p. 25.) According to Defendants, Plaintiff's former counsel attempted service on the Treasurer to satisfy the statutory service requirement, but service was unsuccessful, and Plaintiff has not cured service.

Plaintiff counters simply that Defendants' assertion that he had to cure service and failed to do so is erroneous.  (ECF No. 30, p. 6.)  Additionally, Plaintiff argues that the MTCA is not "valid in federal court" because it conflicts with FED. R. CIV. P. 4.  *Id.*

Plaintiff's assertion that the MTCA is not valid in federal courts because it conflicts with FED. R. CIV. P. 4 is misguided.  Rule 4(e) requires federal courts to look to the state law to determine if service was valid.  Notice to the Treasurer is a requirement under Maryland state law if the claim asserted is an action under the MTCA.  MD. CODE. ANN., STATE GOV'T. § 12-108(a).  Accordingly, since the Treasurer has not been properly notified as required, the state law claims brought under the MTCA will be dismissed.

## CONCLUSION

For the reasons set forth herein, by separate order, the Motion will be granted and the Complaint dismissed.

_____/s/_____
Julie R. Rubin
United States District Judge