IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ARTHUR M. LOVE,** | |
| *Plaintiff*, | |
| v. | Civil No.: 1:21-cv-02029-JRR |
| **STEVEN MCADAMS,** | |
| *Defendant.* | |

**MEMORANDUM OPINION**

This matter comes before the court on Defendant Steven McAdams's Motion to Dismiss. (ECF No. 49; the "Motion to Dismiss") and Plaintiff Arthur M. Love's Motion for Leave to File Surreply (ECF No. 59; the "Surreply Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motion to Dismiss will be granted, and the Surreply Motion will be denied.

**I.   BACKGROUND**[1]

  **A.   Relevant Factual Background**

As the court set forth in its memorandum opinion at ECF No. 37, then-Governor Lawrence J. Hogan, Jr. appointed Plaintiff as Deputy Director of Community Initiatives on January 21, 2015. (ECF No. 1 ¶ 16; the "Complaint.") During Plaintiff's employment, the statutorily-created Governor's Office of Community Initiatives ("GOCI") included the Governor's Office on Service and Volunteerism, the Commission on Indian Affairs, and the Commission on African American History and Culture.[2] MD. CODE ANN., STATE GOV'T §§ 9.5-101, 9.5-401–9.5-408; 2022 Md.

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 1.) *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).
[2] GOCI also now houses the Commission on LGBTQIA+ Affairs, which was established in 2021, after Plaintiff's termination. MD. CODE ANN., STATE GOV'T § 9.5-101; 2023 Md. Laws Ch. 99 (S.B. 551).

Laws Ch. 451 (H.B. 1048).  GOCI is "comprised of staff appointed by the Governor and by staff liaisons from State agencies."[3]  MD. CODE REGS. 01.01.2007.25(C) (2007).  Its activities include, *inter alia*, "[d]eveloping and coordinating the Governor's policy agenda affecting community programs and initiatives," and "[a]dvising the Governor on policies and measures to enhance and improve the delivery of community and volunteerism services."  *Id.* 01.01.2007.25(D).

The Deputy Director "is the lead staff member on all special events and initiatives for GOCI" and works to "establish relationships with nonprofits, government, and for profit organizations to further GOCI's mission." (Position Description, ECF No. 7-4.)[4]  Among other duties, the Deputy Director serves as "the administrative director of the Governor's Commission on Caribbean Affairs," "[r]epresent[s] GOCI and the Governor's Office as requested at networking meetings, volunteer recognition, trainings, and other events," "[l]everage[s] community relationships and resources to advance the goals of GOCI," "[i]nitiates, develops and implements goals, policies and procedures for the Commission [on Caribbean Affairs]," "[a]ppears as the Commission [on Caribbean Affairs'] representative before State, federal and local officials to advise and discuss the needs and concerns of the Native American community in Maryland," and "[c]oordinates all activities of the Commission," including "[d]evelop[ing] and promot[ing] public education and awareness of issues and concerns of Native Americans in Maryland."  *Id.*

---

[3] While not discussed by the parties, it appears that during Plaintiff's employment, GOCI also oversaw the Governor's Commission on Hispanic Affairs (now known as the Governor's Commission on Hispanic and Latin American Community Affairs), MD. CODE REGS. 01.01.2007.25 (2007), and the Governor's Commission on Middle Eastern American Affairs, MD. CODE REGS. 01.01.2007.22 (2007).  *See also* MD. CODE REGS. 01.01.2025.04 (2025) (rescinding the previous Executive Orders).

[4] While the court generally does not consider evidence outside of the Complaint in ruling on a motion to dismiss pursuant to Rule 12(b)(6), it may properly consider "documents integral to and relied upon in the complaint, . . . so long as the plaintiff does not question their authenticity." *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021).  As set forth in the court's memorandum opinion at ECF No. 37, the court properly considers the relevant Facebook posts (ECF No. 7-2), the Termination Letter (ECF No. 7-3), and Position Description (ECF No. 7-4) as integral to the Complaint.  (ECF No. 37 at pp. 6–7.)  Plaintiff does not dispute the authenticity as to same and contends that the Termination Letter and Position Description should be considered.  (ECF No. 56 at p. 2.)

Plaintiff held a political special appointment position per § 6-405(b) of the Maryland State Personnel and Pensions Article, which provides:

> [A] position that is a special appointment may be filled with regard to political affiliation, belief, or opinion if the Secretary determines that the position:
>
> (1) relates to political interests or concerns so as to warrant that political affiliation be a requirement for the position; and
>
> (2)(i) requires the provision of meaningful direct or indirect input into the policy-making process; or
>
> (ii) provides access to confidential information and:
>
> > 1. requires substantial intervention or collaboration in the formulation of public policy; or
> >
> > 2. requires the provision of direct advice or the rendering of direct services to an appointing authority.

MD. CODE ANN., STATE PERS. & PENS. § 6-405(b). (Termination Letter, ECF No. 7-3, identifying Plaintiff's employment as a political special appointment position).

On August 28, 2020, using his private Facebook account, Plaintiff posted a series of memes (here, images with overlayed text) in a private Facebook group called "Inside Maryland Politics" regarding "a matter of great public concern and the subject of national debate"—"civil unrest occurring in Kenosha following the police shooting of Jacob Blake on August 23, 2020," and Kyle Rittenhouse's involvement "in a controversial shooting during one of the Kenosha protests." *Id.* ¶¶ 20, 22, 25; *see* ECF No. 7-2 (including the Facebook posts). Through these memes, Plaintiff alleges he "used his private Facebook account to discuss Mr. Rittenhouse's case and support Mr. Rittenhouse's self-defense right, communicating his personal belief that Mr. Rittenhouse's actions may have been justified under the doctrine of self-defense." (ECF No. 1 ¶ 25.) Plaintiff made

3

these Facebook posts "in his personal time, while lying on his bed in his home, using his private personal Facebook account." *Id.* (emphasis omitted).

The following day, members of the press appeared at Plaintiff's home, prompting him to call Defendant McAdams who was, at all times relevant, Executive Director of the Governor's Office of the State of Maryland. (ECF No. 1 ¶¶ 4, 27.) Defendant McAdams informed Plaintiff that "he need not worry and that they would 'get through this.'" *Id.* ¶ 28. Plaintiff contends that the decision to terminate his employment was made on either August 28 or 29, 2021. *Id.* ¶ 29. On August 29, 2021, a television news report reported that Plaintiff had been terminated from his employment. *Id.* ¶ 30. On August 30, 2021, Defendant McAdams called Plaintiff and informed him that "he had been terminated due to his Facebook posts on Mr. Rittenhouse's potential justification under the doctrine of self-defense." *Id.* ¶ 31. The following day, Plaintiff received his official termination letter via email from Defendant McAdams. *Id.* ¶ 32. (Termination Letter, ECF No. 7-3.) Either McAdams or his representative made public statements regarding Plaintiff's termination, specifically: "These divisive images and statements are inconsistent with the mission and core values of the Office of Community Initiatives. Earlier today, I relieved this employee of his duties." *Id.* ¶ 33.

B. **Relevant Procedural Background**

On August 11, 2021, Plaintiff initiated this action, alleging then-Defendants wrongfully discharged him and violated his rights guaranteed under the First and Fourteenth Amendments of the U.S. Constitution and Article 40 of the Maryland Declaration of Rights. (ECF No. 1.) Relevant here, Plaintiff's Count I is brought under 42 U.S.C. § 1983, alleging retaliation in violation of the First Amendment. (ECF No. 1 ¶¶ 64–77.) Then-Defendants subsequently moved to dismiss Plaintiff's Complaint. (ECF No. 7.) Following briefing on the motion, the court issued its

4

memorandum opinion and order, granting the motion to dismiss and dismissing Plaintiff's Complaint with prejudice. (ECF Nos. 37, 38.) On appeal, the Fourth Circuit affirmed as modified the dismissal of most claims, vacated the dismissal of Count I as to Defendant McAdams, and remanded the claim to this court for further proceedings. *Love v. Hogan*, No. 22-1928, 2025 WL 763473, at *1 (4th Cir. Mar. 11, 2025). The Fourth Circuit modified the dismissal of Plaintiff's claims against the State of Maryland and Defendants in their official capacities to be without prejudice, affirmed the court's dismissal of the claims against all Defendants in their individual capacities except Defendant McAdams, and affirmed dismissal of all claims against Defendant McAdams except for Plaintiff's § 1983 claim against him in his individual capacity, which was vacated and remanded for further proceedings.[5] *Id.* at *5.

Accordingly, this action now proceeds solely as to Plaintiff's Count I, his § 1983 claim against Defendant McAdams in his individual capacity. Upon issuance of the Fourth Circuit's mandate, this court ordered Defendant McAdams to answer Plaintiff's Complaint within 21 days. (ECF No. 47.) Thereafter, Defendant McAdams sought leave to stay his deadline to answer the Complaint in order for the court to first adjudicate his second motion to dismiss—the Motion to Dismiss now pending. (ECF Nos. 48, 49.) Following briefing on the motion to stay, the court granted in part the motion, explaining that the deadline for Defendant McAdams to answer the Complaint was stayed pending the court's resolution of the instant Motion to Dismiss solely on the issue of qualified immunity. (ECF No. 57.)

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended*

---

[5] Neither this court's previous memorandum opinion at ECF No. 37 nor the Fourth Circuit's opinion on appeal addressed whether Defendant McAdams is entitled to qualified immunity.

(Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly*, 550 U.S. at 555, 570). The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

### III. ANALYSIS

As discussed above, the court's sole consideration on the instant Motion to Dismiss is Defendant McAdams' argument that he is entitled to qualified immunity.

A government official sued in his individual capacity may invoke the protection afforded by qualified immunity. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

6

person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "[O]ff[icials] are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *D.C. v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "In the Fourth Circuit, we have a split burden of proof for the qualified-immunity defense"—the plaintiff bears the burden on the first prong, and the official bears the burden on the second prong. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022). "The answer to both questions must be in the affirmative to defeat the offic[ial's] entitlement to immunity." *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 555 (4th Cir. 2017), *as amended* (Aug. 22, 2017).

Because one of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government,'" the Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (quoting *Harlow*, 457 U.S. at 817). Accordingly, while "qualified immunity typically is best addressed at the summary judgment stage after the facts have been developed through discovery," *Riddick v. Barber*, 109 F.4th 639, 650 n.5 (4th Cir. 2024) (citations omitted), dismissal pursuant to Rule 12(b)(6) is nevertheless appropriate "when the face of the complaint clearly reveals the existence of a meritorious" qualified immunity defense. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Brockington v. Boykins,* 637 F.3d 503, 506 (4th Cir. 2011)). If the

court determines that a government official took action that a reasonable official would have believed was lawful, the official is entitled to dismissal before discovery. *See Anderson*, 483 U.S. at 646 n.6, *supra*. Nonetheless, "when asserted at this early stage in the proceedings, 'the [qualified immunity] defense faces a formidable hurdle' and 'is usually not successful.'" *Owens v. Balt. City State's Atty's. Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)).

Defendant McAdams urges that he is entitled to qualified immunity because "the constitutional question presented in this case was not clearly established at the time of [Plaintiff's] termination." (ECF No. 49-1 at p. 9.) Defendant McAdams' challenge thus focuses on the second prong—whether the right was clearly established at the time of the alleged event. Notably, "[t]he question of whether a right is clearly established is a question of law for the court to decide." *Ray v. Roane*, 948 F.3d 222, 228–29 (4th Cir. 2020) (citing *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992)).

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson*, 483 U.S. at 640). "The unlawfulness of an official's conduct must be 'apparent in light of pre-existing law.'" *Nazario v. Gutierrez*, 103 F.4th 213, 230 (4th Cir. 2024) (quoting *Booker v. S.C. Dept. of Corrections*, 855 F.3d 533, 538 (4th Cir. 2017)). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Benton v. Layton*, 139 F.4th 281, 292 (4th Cir. 2025) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). The court applies an "objective standard," thus analyzing "this prong from the perspective of a reasonable offic[ial]." *deWet v. Rollyson*, 157 F.4th 344, 349 (4th Cir. 2025) (quoting *Lewis v. Caraballo*, 98 F.4th 521, 534 (4th Cir. 2024)).

To determine whether a right is clearly established, the court first looks to "the appropriate level of specificity," and then to "cases of controlling authority in this jurisdiction . . . to determine whether a reasonable official would be on notice that his actions violate the law." *Id.* (first quoting *Est. of Jones by Jones v. City of Martinsburg*, 961 F.3d 661, 667 (4th Cir. 2020); then quoting *Franklin v. City of Charlotte*, 64 F.4th 519, 534 (4th Cir. 2023)). The precedent need not concern the "exact conduct at issue," *see Merch v. Bauer*, 677 F.3d 656, 665–66 (4th Cir. 2012), or be "directly on point," *see Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5–6 (2021), for a right to be clearly established. Instead, "the existing authority must be such that the unlawfulness of the conduct is manifest." *Merch*, 677 F.3d at 665–66 (quoting *Wilson v. Layne,* 141 F.3d 111, 114 (4th Cir. 1998)). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5–6 (2021) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

Of particular importance here, "in First Amendment cases, where a sophisticated balancing of interests is required to determine whether the plaintiff's constitutional rights have been violated, only infrequently will it be clearly established that a public employee's speech on a matter of public concern is constitutionally protected." *Fowler v. Stolle*, 760 F. Supp. 3d 416, 427 (E.D. Va. 2024) (quoting *McVey v. Stacy*, 157 F.3d 271, 277 (4th Cir. 1998)). Indeed, officials are not required to "resolve subtle or open issues," and are instead liable where they "transgress[] bright lines." *deWet*, 157 F.4th at 349 (quoting *McVey*, 157 F.3d at 277).

Defendant McAdams contends here that "[t]he scope and contours of [Plaintiff's] free speech rights, informed by his decision to accept an appointment by the governor, [were] not clearly established at a sufficient level of particularity." (ECF No. 49-1 at p. 11.) He urges that Plaintiff's "title of deputy director, his classification as a political special appointee, the Office's

9

statutory responsibilities, and the nature of the politically-influenced matters that the Office addressed—render this case the type of legally uncertain terrain."[6] *Id.* at p. 12. The applicable law at issue here relates to a public employee's First Amendment rights and the applicability of the *Elrod-Branti* exception.

Accordingly, consistent with the practice detailed above, the court considers with specificity the right asserted and controlling precedent based on the facts as alleged, the undisputed record properly considered, and the relevant statutory scheme. The First Amendment, made applicable to the states by the Fourteenth Amendment, protects both freedom of speech and "the right to be free from retaliation by a public official for the exercise of that right." *Bland v. Roberts*, 730 F.3d 368, 373 (4th Cir. 2013), *as amended* (Sept. 23, 2013) (quoting *Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir. 2000)); *see* U.S. CONST. AMEND. I ("Congress shall make no law . . . abridging the freedom of speech."). The *Elrod-Branti* exception presents a limitation on a public employee's First Amendment rights. *Lawson v. Union Cnty. Clerk of Ct.*, 828 F.3d 239, 247 (4th Cir. 2016), *as amended* (July 8, 2016). In particular, the exception, which stems from the Supreme Court's decisions in *Elrod v. Burns*, 42 U.S. 347 (1976), and *Branti v. Finkel*, 445 U.S. 507 (1980), provides that "policymaking employees may be terminated for their political beliefs if 'party affiliation is an appropriate requirement for the effective performance of the public office involved.'" *Lawson*, 828 F.3d at 247 (quoting *Branti*, 445 U.S. at 518). This "narrow exception" was created "to give effect to the democratic process." *Jenkins v. Medford*, 119 F.3d 1156, 1161 (4th Cir. 1997).

---

[6] As set forth in the court's order at ECF No. 57, the court declines at this stage to consider whether Plaintiff's claims are barred by the *Elrod-Branti* exception as a matter of law. Instead, the court's analysis here turns on whether Defendant McAdams' conduct was "clearly established" as unlawful at the time of the purported violation in view of controlling First Amendment precedent, including the *Elrodi-Branti* exception.

As was clearly established at the time of Plaintiff's termination, "the ultimate inquiry" underlying the applicability of this exception "is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation [or political allegiance] is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 518 (alteration in original). The Fourth Circuit has adopted a two-part test for conducting the *Elrod-Branti* analysis. *Bland*, 730 F.3d at 375. First, the court considers whether the plaintiff's position "involve[s] government decisionmaking on issues where there is room for political disagreement on goals or their implementation." *Stott v. Haworth*, 916 F.2d 134, 141 (4th Cir. 1990). If so, the court next "examine[s] the particular responsibilities of the position to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation or political allegiance is an equally appropriate requirement." *Bland*, 730 F.3d at 375 (citation modified).

The first step "examine[s] the issues dealt with by the employee 'at a very high level of generality,' while '[t]he second step requires a much more concrete analysis of the specific position at issue.'" *Bland,* 730 F.3d at 375 (quoting *Fields v. Prater*, 566 F.3d 381, 386 (4th Cir. 2009)). "At the second step, 'courts focus on the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office.'" *Id.* (quoting *Stott*, 916 F.2d at 142.) Accordingly, under the second step, the inquiry "focus[es] on the job description for the position in question and 'only look[s] past the job description where the plaintiff demonstrates some systematic unreliability, such as where the description has been manipulated in some manner by officials looking to expand their political power.'" *Id.* (quoting *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008)). In the context of qualified immunity in view of *Bland*, the law is clearly

11

established that an official "must carefully evaluate the job duties of" the employee "in order to determine whether the *Elrod-Branti* exception applies." *See Claridy v. Anderson*, No. CIV.A. ELH-13-02600, 2015 WL 1022401, at *22 (D. Md. Mar. 9, 2015).

The question here then is whether, based on the allegations and the undisputed record before the court, a reasonable official would have been on notice that terminating Plaintiff for his Facebook posts was manifestly unlawful. *See deWet*, 157 F.4th at 349, *supra*. Upon consideration of the allegations at issue here (accepted as true), against the backdrop of the *Elrod-Branti* exception and the sophisticated balancing of interests required under the First Amendment, *see Fowler*, 760 F. Supp. 3d at 427, *supra*, the court is persuaded, as Defendant McAdams argues, that the parameters of Plaintiff's First Amendment right were not "clearly established" such that a reasonable person in Defendant McAdams' position would understand that Plaintiff's termination violated the law. The court finds disposition of Defendant McAdams' qualified immunity defense to be warranted at the present stage based on the relevant statutory scheme and the presently undisputed allegations and record at issue. Importantly, while the parties disagree about what legal conclusions should be drawn from the applicable facts, the material facts themselves are undisputed.

In particular, it is undisputed that Plaintiff held a political special appointment and that, according to Maryland's statutory designation, such positions, *inter alia*, "relate[] to political interests or concerns," and either "require[] the provision of meaningful direct or indirect input into the policy-making process" or "provide[] access to confidential information."[7] *See* ECF No. 7-3; ECF No. 56 at p. 3; MD. CODE ANN., STATE PERS. & PENS. § 6-405(b). Of note, while not entitled

---

[7] Although Plaintiff does not dispute that his position was a political special appointment or the Position Description detailing the duties of the Deputy Director, Plaintiff does dispute that such duties involved policymaking or formation. (ECF No. 56 at pp. 4–5.)

to "absolute deference," *See McCrerey v. Allen*, 118 F.3d 242, 245 (4th Cir. 1997), Plaintiff's position as a political special appointee "creates a presumption at law that discharge or demotion was proper." *Stott*, 916 F.2d at 142.

While Plaintiff urges that GOCI "oversees non-partisan functions," a reasonable official could certainly find that at least some of the work of GOCI, including that which pertains to racial minority communities and, as Defendant McAdams frames it, "cultural values and public policy," "involve[s] government decisionmaking on issues where there is room for political disagreement on goals or their implementation." *See Stott*, 916 F.2d at 141; ECF No. 49-1 at p. 4. The position of Deputy Director similarly deals in these sorts of topics. Not only is the position statutorily designated as one that either provides input into the policy-making process or has access to confidential information, *see* MD. CODE ANN., STATE PERS. & PENS. § 6-405(b), but it also includes duties of representing GOCI and the Governor's office at relevant meetings and trainings, leveraging community relationships to advance GOCI's goals, developing and initiating the goals of the Commission on Caribbean Affairs, including coordinating its activities and operations, and promoting "public education and awareness of issues and concerns of Native Americans in Maryland." (Position Description, ECF No. 7-4.) Contrary to Plaintiff's contention, such duties are not merely logistical in nature. (ECF No. 56 at p. 4.) A reasonable official could conclude, consistent with established precedent, that such duties instead resemble those of "a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation or political allegiance is an equally appropriate requirement," *see*

13

*Bland*, 730 F.3d at 375, *supra* (citation modified), especially against the relevant statutory backdrop confirming same.[8] *See* MD. CODE ANN., STATE PERS. & PENS. § 6-405(b).

Simply put, in view of the foregoing, controlling authority on a public employee's First Amendment rights and application of the *Elrod-Branti* exception at the relevant time would not have put a reasonable official on notice that the conduct alleged violated clearly established law. *See deWet*, 157 F.4th at 349, *supra*. The relevant caselaw as applied to the allegations here can hardly be said to present a "bright line." *See Fields v. Prater*, 566 F.3d 381, 389 (4th Cir. 2009) (noting that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines") (quoting *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992)).

The authority on which Plaintiff relies in support of his assertion that applicable law was sufficiently clearly established is unavailing. (ECF No. 56 at pp. 4–5.) It is certainly clearly established that the Supreme Court has recognized "the right of employees to speak on matters of public concern." *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 80 (2004) (citing *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563 (1968); *Connick v. Myers*, 461 U.S. 138 (1983)). This is also true where an employee "decides to express his views privately rather than publicly." *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 414 (1979). The precedent also supports, as Plaintiff argues, First Amendment protection of speech in the context of social media. *See Packingham v. North Carolina*, 582 U.S. 98 (2017) (holding that "to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights").

---

[8] Plaintiff does not allege that the Position Description is "systematical unreliab[le]" or "has been manipulated in some manner by officials." *Bland v. Roberts*, 730 F.3d 368, 375 (4th Cir. 2013), *as amended* (Sept. 23, 2013). Indeed, he contends the court "must" consider the Termination Letter. (ECF No. 56 at p. 2.)

14

But the fact that these cases generally pertain to or acknowledge First Amendment rights of public employees or protection of free speech on social media is of no moment here. Binding precedent is clear that "certain public employees can be terminated for political association in order to give effect to the democratic process." *McCaffrey v. Chapman*, 921 F.3d 159, 164 (4th Cir. 2019) (citing *Branti v. Finkel*, 445 U.S. 507 (1980), and *Elrod v. Burns*, 427 U.S. 347 (1976)). The court's consideration of qualified immunity here instead turns on whether it was clearly established by applicable law, including the *Elrod-Branti* exception, that termination of Plaintiff based on his social media posts violated his First Amendment rights. The cases cited by Plaintiff do not show that it was "clearly established" that Plaintiff's termination was unlawful based on existing precedent.

Accordingly, based on the foregoing—namely, Plaintiff's political special appointment, the role of GOCI and its Deputy Director, and binding precedent discussing the *Elrod-Branti* exception at the time, the court agrees that Defendant McAdams is immune from suit by operation of qualified immunity because a reasonable person in Defendant McAdams position would not have been on notice that termination of Plaintiff was manifestly unlawful (based on controlling authority at the time). *See deWet*, 157 F.4th at 349 and *Merch*, 677 F.3d at 665–66, *supra*. Even assuming without deciding that "the record at this stage does not permit an ultimate decision as to whether" Plaintiff's position was a policymaker, a privy to confidential information, a communicator, or otherwise had a function such that party affiliation or political allegiance is an equally appropriate requirement, the record nonetheless "adequately supports" Defendant McAdams' contention "that it was objectively reasonable for [him] to believe that it was."[9] *See*

---

[9] Plaintiff's contention that "claims of mission consistency . . . may require discovery" is speculative and not compelling when the court's assessment of qualified immunity turns on the presently undisputed allegations and record before the court. (ECF No. 56 at p. 5.)

15

*McEvoy v. Spencer*, 124 F.3d 92, 105 (2d Cir. 1997). The court will therefore grant Defendant McAdams' Motion to Dismiss and dismiss Plaintiff's sole remaining claim.[10]

## IV.   SURREPY MOTION

On August 11, 2025, more than two months after the briefing for the Motion to Dismiss had concluded, Plaintiff filed his Surreply Motion based on what Plaintiff refers to as "new factual assertions and characterizations" raised in Defendant McAdams' reply. (ECF No. 59 ¶ 2.) Plaintiff purports to attach the Surreply as Exhibit 1, but Exhibit 1 is a series of attachments. (ECF No. 59-1.)

Pursuant to Local Rule 105.2(a), "[u]nless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Even disregarding the timeliness concern of Plaintiff's Surreply Motion, the court is not persuaded to grant Plaintiff's Surreply Motion for a number of reasons. First, Plaintiff has not actually filed any surreply; instead, he has submitted a series of documents, the bases for which are unclear. Moreover, as set forth above and in the court's earlier opinion, courts generally do not consider matters outside the pleadings when ruling on a Rule 12(b)(6) Motion. In the absence of the proposed surreply, the court is unable to discern the purpose of the proffered exhibits or any basis on which Plaintiff contends they should be considered.[11] Further still, Plaintiff's challenge concerns what he purports are disputed facts, but adjudication of the Motion to Dismiss does not bear on, or involve, disputes of fact. As made clear, *supra*, the court accepts Plaintiff's allegation as true in ruling on the instant Motion to Dismiss; the court's

---

[10] Plaintiff contends qualified immunity is unavailable to Defendant McAdams because the Complaint alleges he intentionally targeted Plaintiff's speech. (ECF No. 56 at p. 5.) Plaintiff mistakes the point. The *Elrod-Branti* exception of course contemplates the intentional act of employment termination; this does not bar application of the qualified immunity doctrine. *See, e.g.*, *Bland v. Roberts*, 730 F.3d 368, 394 (4th Cir. 2013), *as amended* (Sept. 23, 2013) (concluding defendant was entitled to qualified immunity); *Claridy v. Anderson*, No. CIV.A. ELH-13-02600, 2015 WL 1022401, at *23 (D. Md. Mar. 9, 2015) (same).

[11] Plaintiff's Surreply Motion notes that it is "supported by Plaintiff's sworn declaration and exhibits," but the court is unable to locate same. (ECF No. 59 ¶ 4.)

analysis solely turns on whether, based on the allegations of the Complaint and unchallenged documents properly considered on the instant Motion, Defendant McAdams has shown an entitlement to qualified immunity. Accordingly, the court will deny the Surreply Motion.

## V.  CONCLUSION

For the reasons set forth herein, Defendant McAdams's Motion to Dismiss (ECF No. 49) will be granted, and Plaintiff's Surreply Motion (ECF No. 59) will be denied.[12]

December 15, 2025                              /s/_____
                                               Julie R. Rubin
                                               United States District Judge

---

[12] Defendant seeks dismissal with prejudice. Consistent with Fourth Circuit precedent, the court will dismiss Plaintiff's § 1983 claim against Defendant McAdams in his individual capacity with prejudice because it concludes he is entitled to qualified immunity. *See Hong Tang v. Univ. of Baltimore*, 782 F. App'x 254, 255 (4th Cir. 2019) (citing *Moore ex rel. Moore v. Briggs*, 381 F.3d 771, 775 (8th Cir. 2004) and explaining that "dismissal for . . . qualified immunity would be with prejudice"); *Allen v. Cooper*, 895 F.3d 337, 358 (4th Cir. 2018), *aff'd,* 589 U.S. 248 (2020) (concluding that state officials sued in their individual capacities were entitled to qualified immunity and remanding with instructions to the district court "to dismiss with prejudice" such claims).